[Crim. No. 7172. Second Dist., Div. Two. June 20, 1960.]

In re RONALD BERNARD MERKLE, on Habeas Corpus.

Russell A. Holt for Petitioner.

Thomas W. Bewley, City Attorney (Whittier), for Respondent.

William B. McKesson, District Attorney (Los Angeles), Harry Wood and Ralph F. Bagley, Deputy District Attorneys, as Amici Curiae on behalf of Respondent.

RICHARDS, J. pro tem.*—Petitioner, while driving an automobile at 2:30 a. m. on September 14, 1959, was stopped by the Whittier police because of his erratic driving. He was given a field sobriety test, placed under arrest for drunk driving and taken to the police station. A misdemeanor com-

*Assigned by Chairman of Judicial Council.

plaint was duly filed, charging him with drunk driving under Vehicle Code, section 502, and driving without a driver's license, Vehicle Code, section 274, subdivision (b), and petitioner was found guilty of both charges by a jury trial. After denial of a motion for new trial, he was sentenced to serve 10 days in jail and to pay a fine in the sum of $250.

An appeal was taken from the judgment and order denying his motion for a new trial; a stay of sentence was issued pending the appeal, and defendant released on bail.

The Appellate Department of the Superior Court of Los Angeles County affirmed the judgment and order by written opinion duly filed. Thereafter, a petition for rehearing was denied and the remittitur duly issued. Upon the filing of the remittitur, the trial court ordered petitioner to appear on April 15, 1960, for execution of the sentence. The day prior to said date there was filed in this court and presented to us a petition for a writ of habeas corpus certified by the petitioner as true under the penalty of perjury alleging that he was constructively restrained of his liberty by the chief of police of the city of Whittier; that such restraint was illegal and that he had been denied his constitutional right to have his counsel present for a blood-alcohol test pertaining to his arrest for drunk driving. Based primarily upon his categorical allegation that "the police officers also refused to allow petitioner to call his attorney" we issued the writ.

The chief of police of Whittier has filed his return that the petitioner has at no time been in his custody by virtue of the municipal court judgment. Although the petition herein disclosed that the question of petitioner's right to have counsel at the time of a blood-alcohol test was raised both before the trial court and the appellate court, we granted this writ, not to review the decision of the appellate department on the appeal of the judgment but in order to determine whether petitioner had been denied a fundamental right of constitutional due process. (*In re Masching,* 41 Cal.2d 530, 532 [261 P.2d 251].)

The essential inquiry is whether petitioner was in fact denied the right of having counsel present at a proposed blood-alcohol test, and, if so, whether that denial constituted a deprivation of due process.

We are governed in this proceeding by the established rule that petitioner has the burden of alleging and proving by a preponderance of the evidence all of the facts upon which he relies to show his illegal detention. (*In re Berry,* 43 Cal.2d

838, 846 [279 P.2d 18] ; *In re Masching, supra,* page 533; *In re Newbern,* 180 Cal.App.2d 104, 106 [4 Cal.Rptr. 43] ; *In re Ancheta,* 80 Cal.App.2d 255, 256 [181 P.2d 686] ; *In re Soldavini,* 64 Cal.App.2d 677, 679 [149 P.2d 193].) ▮▮▮ He likewise is charged with the sustaining of his claims that he has suffered essential unfairness and injustice, and in order to have the result set aside, these claims must be sustained not as a matter of speculation but as a demonstrable reality. (*People* v. *Crooker,* 47 Cal.2d 348, 353 [303 P.2d 753] ; *In re Newbern, supra,* 180 Cal.App.2d 104, 106, 107.)

The only record before us consists of the reporter's transcript of oral proceedings at the municipal court trial; the transcript of the municipal court docket; the opinion of the appellate department affirming the judgment and the petition herein which was stipulated to serve as a traverse to the return of the writ.

Thus, the only ''evidence of all the facts upon which he relies to show his illegal detention'' (*People* v. *Newbern, supra*) is the testimony of the defendant and of the police officer at the trial as set forth in the reporter's transcript of the oral proceedings.

There is not involved in this proceeding any suggestion of a denial of the right to counsel during any of the proceedings after the filing of the complaint or based upon any failure to comply with the provisions of Penal Code, sections 858 and 987; nor that any time after the complaint was filed was petitioner denied counsel as permitted under Penal Code, section 686, for it appears that he has been ably represented by his counsel herein throughout the municipal court proceedings and on the appeal. The narrow point for first consideration is whether or not there was in fact a refusal by the arresting officers to allow petitioner to consult with an attorney upon his demand that he be permitted so to do. ''The cases involving this question usually turn on the application of their own facts.'' (*In re Masching, supra,* p. 535—concurring opinion Shenk, J.)

Because the evidence in support of petitioner's claim that he was in fact denied the right to have counsel present comes primarily from his own lips at the trial as to the events which transpired at the police station within an hour after he was arrested for drunk driving, in order to weigh the probative value of petitioner's testimony at the trial, we are entitled to consider the arresting officer's testimony as to petitioner's state of sobriety at the time the events took place. ▮▮▮ ''His

sobriety might reasonably affect the weight of his testimony. Testimony which may tend to show that a witness was so drunk as to materially impair his ability to comprehend or correctly relate what he claims to have seen or heard respecting the controverted facts, is competent as affecting the weight of his testimony.'' (*Silvey* v. *Harm*, 120 Cal.App. 561, 572 [8 P.2d 570].) ■ ''That a person's power of perception, the accuracy of his deductions and the integrity of his memory may be greatly affected by his condition as to sobriety, is, of course, a matter of common knowledge and it will not be seriously controverted.'' (*People* v. *Salladay*, 22 Cal.App. 552, 555 [135 P. 508].)

Officer Myers, one of the arresting officers, testified at the trial, in substance, that he first saw the petitioner at 2:30 a. m. on the morning of September 14, 1959; that in following him for five or six blocks on a four-lane street the petitioner swerved from curb to center and back from four to six times; that he jammed on the brakes at an intersection so that the car ''fish-tailed''; that he smelled a strong alcoholic odor on the petitioner; that petitioner had trouble talking; that during the field test when standing with his arms outstretched, his head back and his eyes closed, the petitioner fell backwards; that petitioner partially fell when standing on one foot while swinging the other leg; that in the heel and toe test the petitioner could not get heel to toe and lost his balance; that in the finger to nose test, the petitioner touched his eyes and all other parts of his face except his nose; that defendant said ''he had been drinking and that he had drank [sic] too much''; that petitioner was then told he was under arrest for drunk driving; that petitioner requested and was granted permission to go to a nearby phone and that the officer found he could not operate it but was merely trying to dial the phone without depositing any money; that the petitioner was then placed in the police car and started for the station; that in the police car the petitioner became abusive and very loud; that he called the officer and his partner ''Communists''; that he aspersed the officer's legitimacy and epithetized him as a fornicating male progeny of a female canine; that petitioner could not sit up in the car seat and that when he pushed him back, the petitioner accused the officer of being a ''queer and making advances.'' While in the car, the petitioner demanded a blood test and a radio call was made to the station to get a doctor; that when they arrived at the station, the petitioner again demanded a blood-alcohol test and that a doctor arrived within 15 minutes;

that when the doctor was prepared to take a blood sample, the defendant refused to permit it and also refused to take an intoximeter test; that he refused to sign the booking card and deliberately smeared the fingerprint card; that the petitioner had no wallet nor identification of any kind and no driver's license. On cross-examination the same officer testified that after the doctor arrived, who had been called at the defendant's request, the defendant refused to submit thereto and said "it was his right, by law, to allow his attorney to be there when the blood was taken"; that petitioner was informed "this was not necessarily a right that can be demanded by a defendant."

According to the testimony of the petitioner at the trial, he had had part of one drink at 9:30 p. m. and part of another drink at midnight, and no other intoxicating liquor whatsoever; that he performed all of the field tests; that he had used the phone at the scene and tried through "Information" to get the names of a couple of friends but was unsuccessful; that when they got to the station "I asked for a blood test." Then follow the following questions and answers: "Q. Did you ask to make a phone call? A. Yes. Q. Who did you ask to call? A. I wanted to call my attorney. Q. Would they let you call? A. No." Later on the court asked the question: "Did a man come down to take your blood test?" to which the defendant answered: "Yes, and I did not refuse." Later the court asked: "When the man got there, did you submit yourself to a blood-alcohol test?" to which the defendant responded: "No." The defendant further testified that he told the officers that he thought it was his right to have his attorney present and would take the test "if I could have my attorney present." He further testified that they refused to let him make any phone calls whatsoever. On cross-examination the defendant admitted that he did not have his driver's license, nor any wallet, nor identification. Then appears the following question by the court and answer by the defendant: "Q. The end result . . . is simply that you did not want to give blood for a sample unless your attorney was there, . . . ? A. Yes."

The evidence of petitioner's erratic driving; the odor of his breath; his inability to operate the pay telephone; his conduct in the police car and at the police station; his admission that he had had too many drinks and the officer's opinion that petitioner was intoxicated was sufficient not only to support the judgment of conviction as decided by the

appellate department, but to compel us to view his testimony at the trial as largely rationalization and unworthy of belief.

Turning then to the only other evidence before us on this point, which is the officer's testimony quoted above to the effect that after the doctor had been called at the petitioner's request and was present and ready to take the blood sample, the petitioner refused, saying that it was his right to have his attorney there when the sample was taken, to which the officer replied that such was not necessarily a right which he could demand. The record does not show that defendant at any time asked to make a call to his attorney; that at any time did he ever mention the name of an attorney; nor that any direct request to call an attorney was refused. The most that can be said is that defendant's statement to the police that he would not take the test unless his attorney was present was a mere excuse for refusing to take the test and not a demand for the assistance of counsel. We are unable to find from the credible evidence that there was in fact any request by the defendant for permission to secure the presence or assistance of an attorney. Absent a request and a refusal, there can be and is no denial of petitioner's right of assistance of counsel.

The petitioner having failed to sustain his burden of proof of facts essential to establish any illegal detention, it becomes unnecessary to consider whether or not under the circumstances here disclosed a denial of a request to have counsel present at the time of a blood-alcohol test constitutes a deprivation of due process and we express no opinion on that question.

The writ is discharged and the petitioner is remanded to the custody of the chief of police of the city of Whittier. Bail is exonerated.

Fox, P. J., and Ashburn, J., concurred.