[No. H029866. Sixth Dist. May 23, 2007.]

In re PAUL W. on Habeas Corpus.

38

**COUNSEL**

Robert Navarro, under appointment by the Court of Appeal, for Appellant Gail W.

Caroline J. Todd, under appointment by the Court of Appeal, for Respondent Paul W.

Ann Miller Ravel, County Counsel, and Arleen Rozul, Deputy County Counsel, for Respondent Department of Family and Children's Services.

**OPINION**

**McADAMS, J.**—This appeal is the latest in a series of appellate challenges to juvenile court orders made in this dependency proceeding.[1] It is brought by the mother of four dependent children.

In this appeal, the mother challenges her lack of party status in the habeas corpus proceeding below, which this court ordered to examine the father's claim of ineffective assistance of counsel at the jurisdiction and disposition phases of the underlying dependency proceeding. The father asks us to

---

[1] The father has previously filed six appeals and a petition for writ of habeas corpus in this court. We resolved his first three appeals on the merits, all in unpublished opinions (H027068, May 4, 2005; H027540, May 4, 2005; H028424, Dec. 21, 2005). As to the father's separate writ petition, which claimed ineffective assistance of counsel at the jurisdiction and disposition hearing, we issued an order to show cause, returnable in the trial court (H028475, May 4, 2005). We dismissed the father's other three appeals as moot, after the trial court ruled in the habeas corpus proceeding (H028682; H029310; H029527, dismissal order Jan. 20, 2006). This appeal by the mother arises from the trial court's ruling in that proceeding.

dismiss this appeal, asserting lack of standing, forfeiture, and mootness. He also defends the trial court's decision on the merits.

So far as we are aware, no authority addresses the issue of standing in this particular procedural context. Addressing the question as one of first impression, we conclude that the mother lacks standing to prosecute this appeal. We therefore grant the father's motion to dismiss on that ground.

## OVERVIEW OF DEPENDENCY LAW

As an aid to understanding the procedural history of this case, we begin with a brief overview of dependency law.

### I. *Statutory Objectives*

■ The Legislature has provided for juvenile court jurisdiction over dependent children. (Welf. & Inst. Code, § 300 et seq.)[2] The primary goal of the dependency statutes is "to ensure the safety, protection, and well-being of children who are at risk of abuse, neglect, or exploitation, while preserving the family whenever possible." (*In re David M.* (2005) 134 Cal.App.4th 822, 824 [36 Cal.Rptr.3d 411].)

### II. *Juvenile Court Proceedings*

In dependency proceedings, there are generally four phases: (1) detention and jurisdiction; (2) disposition; (3) the provision of services for reunification or family maintenance, accompanied by periodic review hearings; and (4) either a permanent plan for the child's placement outside of the parent's home or termination of the dependency. (See *In re Matthew C.* (1993) 6 Cal.4th 386, 391 [24 Cal.Rptr.2d 765, 862 P.2d 765]; see generally, *Cynthia D. v. Superior Court* (1993) 5 Cal.4th 242, 247–250 [19 Cal.Rptr.2d 698, 851 P.2d 1307].) Once the juvenile court assumes dependency jurisdiction, it has broad authority to modify orders in the best interests of a dependent child. (§§ 385, 388; see also Cal. Rules of Court, rule 5.570.)

### III. *Representation*

■ Under statutory law and court rules, an indigent parent in a dependency proceeding has a right to appointed counsel where out-of-home placement is an issue. (§ 317, subd. (b); *In re Kristin H.* (1996) 46 Cal.App.4th 1635, 1659 [54 Cal.Rptr.2d 722].) "There is also a due process constitutional right to representation by counsel on a case-by-case basis when the result of

---

[2] Further unspecified statutory references are to the Welfare and Institutions Code.

the hearing may be termination of parental rights." (*In re Arturo A.* (1992) 8 Cal.App.4th 229, 238 [10 Cal.Rptr.2d 131].) All parties who are represented at dependency proceedings are entitled to competent counsel. (§ 317.5, subd. (a).) This court previously has approved the use of habeas corpus petitions in dependency proceedings to raise claims of ineffective assistance of counsel. (*In re Kristin H.*, at pp. 1658, 1663.)

## FACTUAL AND PROCEDURAL BACKGROUND

We summarized the history of this case in a prior appeal. (H027540, May 4, 2005.) We include relevant portions of that summary here, followed by a synopsis of subsequent events.

*Family History*

Four children are involved in this case: a boy and his three younger sisters.[3] They were born in 1990, 1992, 1994, and 1996, respectively.

The parents, Gail W. and Paul W., married in California in 1989. They moved to Colorado in 1993. The couple separated in 1998 and subsequently divorced. Gail returned to California in 1998 with all four children, and Paul moved here the following year. Paul has remarried and has a second family, which includes his wife Amber W., her two sons by a previous marriage, and two daughters born to the couple.

At the time Gail left for California in 1998, Colorado authorities were investigating a disclosure by Middle Daughter (then three and a half years old) that her father's penis had touched her vagina. By then, Gail had also learned that Son may have been sexually abused by Paul's father, a convicted child molester.

Starting in 1999, Gail and Paul were engaged in a high-conflict custody dispute over the children. That dispute resulted in periodic orders for supervised visitation, court-ordered custody evaluations in 2000 and 2002, and a court-ordered investigation of the disputed sexual abuse allegations against Paul. That investigation began in 2003 but it was never completed because this dependency proceeding intervened.

*Dependency Proceedings*

In May 2003, a referral was made to Santa Clara County's Department of Family and Children's Services (the Department). That referral followed

---

[3] As we have done in prior opinions involving this dependency proceeding, we refer to the children as "Son," "Oldest Daughter," "Middle Daughter," and "Youngest Daughter," in order to protect their identity.

Middle Daughter's report of recent sexual impropriety by her brother. In September 2003, the Department received another referral, this one based on Son's violence toward Middle Daughter. Further investigation by the Department revealed that Son also was aggressive and sexually inappropriate toward his other sisters, and that Gail was not always able to stop him from harming the girls. The Department was also aware of Middle Daughter's 1998 disclosure of molestation and of the allegation that Son may have been sexually abused.

*Petitions*

In September 2003, the Department filed petitions alleging grounds for dependency jurisdiction as to all four children. The petitions asserted (1) that Gail and Paul had failed to protect the children; (2) that the children were suffering or were at substantial risk of suffering serious emotional damage; (3) that the children had been sexually abused; and (4) that the children were at substantial risk of abuse or neglect because a sibling had been abused or neglected. (§ 300, subds. (b)–(d), (j).)

All four children were detained. Son was removed from Gail's physical custody and was placed with maternal relatives in San Diego.

*Jurisdiction and Disposition*

Starting in November 2003, the juvenile court conducted a combined jurisdiction and disposition hearing. All parties were represented by counsel. Sexual abuse was a central issue. Over the course of the lengthy contested hearing, the court received extensive documentary and testimonial evidence. The court announced its decision at the close of the hearing on December 9, 2003. Its formal jurisdictional and dispositional order was entered in January 2004.

The juvenile court sustained jurisdiction as to all four children. In doing so, it made three specific factual findings: that Son had engaged in sexual impropriety with Middle Daughter in May 2003; that Paul's father had unmonitored access to Son and had molested him; and that Paul had touched Middle Daughter's vagina with his penis in 1998 or before. The court sustained the allegations of each of the four petitions.

In its dispositional orders, the court declared all four siblings dependent children. With respect to the girls, Gail retained custody, subject to supervision by the Department. As to the boy, the court concluded that removal was necessary, and it continued his placement with relatives in San Diego. The court ordered services for the parents, including parenting classes, counseling,

and psychological evaluations. The court also ordered supervised visitation between Paul and his children.

Paul appealed, challenging both the jurisdictional and the dispositional orders. We affirmed. (H027068, filed May 4, 2005.) We concluded that sufficient evidence supported the juvenile court's specific factual findings and its assumption of jurisdiction. We also determined that the court did not err in removing Son from parental custody and placing him with relatives out of county.

At the same time, however, we reviewed Paul's petition for a writ of habeas corpus, which challenged the jurisdictional and dispositional orders on the ground of ineffective assistance of counsel, and we issued an order to show cause, returnable in the superior court, as to that claim. (H028475, order filed May 4, 2005.) We later modified the order to show cause, to include an order for appointment of counsel. (H028475, order filed May 23, 2005.)

### Postdisposition Hearings

Following disposition, the parties returned to the juvenile court for numerous review hearings and other proceedings.

### Six-month Review: May 2004

In a report prepared for the six-month review hearing, the Department's social worker recounted Paul's failure to comply with any court-ordered services, with the exception of two visits with his son. The social worker recommended "that there be no visitation between the father and the children until the father apologizes to the children, takes responsibility for his actions towards them and submits to the Court's orders."

In May 2004, the juvenile court conducted the six-month review hearing. Paul appeared in propria persona. He disputed the earlier jurisdictional finding that he had molested Middle Daughter, which prompted the court's comment that it would not "relitigate the factual issue." Paul also vehemently objected to the social worker's recommendation that visits be suspended until he apologizes and takes responsibility for the harm to his children, saying: "I can tell you when that will happen. Never. Never. Never."

By formal order filed on May 24, 2004, the court adopted the social worker's recommendations, with corrections as noted. The court thus terminated Paul's visitation with all four children, and it prohibited Paul from "physical contact or communication of any kind" with them. The court continued services to both parents, and it set a 12-month review hearing for November 2004.

Paul challenged the foregoing orders in his second appeal. We affirmed, finding sufficient evidence to support them. (H027540, opinion filed May 4, 2005.)

*Further Review Hearings: December 2004–January 2005*

The review hearing set for November 2004 was continued to the following month. Paul continued to appear in propria persona, having been rebuffed in his attempts to obtain appointed trial counsel. The court received a report from the Department, which indicated that the matter was before the court for a review of family maintenance—the girls' 12-month review and Son's six-month review. The Department's proposed orders included one that conditioned "consideration of reinstating visitation between [Paul] and any of the children" on his completion of a psychological evaluation and a counseling program. At the December 2004 hearing, the court set a trial management conference for the following month.

At the continued hearing on January 11, 2005, the discussion first centered on Son. Based on the parties' comments, the court identified two contested issues for trial concerning Son and Paul: the continuation of reunification services and visitation. The court set a trial date in the matter, bifurcating the contested hearing in Son's case from the review hearing for the girls.

The court then turned to the 12-month review hearing for the girls. When the court asked Paul whether he was "ready to go forward on the girls' case," he responded in the negative, explaining that he intended to file a modification petition. The court told him: "We can do that and we can still go forward today." Paul indicated that he understood. The other parties submitted on the Department's recommendation. The juvenile court then adopted the Department's recommendations regarding the girls and it set the next family maintenance hearing for June 2005.

The ensuing order was the subject of Paul's third appeal, which raised a procedural due process challenge to the conditions imposed on reinstatement of visitation with the girls. We struck the challenged portion of that order. (H028424, opinion filed Dec. 21, 2005.)

*Petition for Modification: March 2005*

In March 2005, still acting in propria persona, Paul filed a verified petition for modification under section 388. In the form petition, Paul specified that he was seeking to modify or set aside the orders made in May 2004, after the six-month review, which had terminated his visitation with the children and prohibited him from physical contact or communication of any kind with them. Paul identified the requested modifications as: "1) Reversal on Jurisdictional findings of December 9, 2003," and "2) Visitation to be reinstated, opportunity to send cards, letters, gifts, etc. to be a part of school, church, athletic events, and other public events, etc."

The juvenile court denied Paul's request for reversal of the jurisdictional findings with the statement that a "§ 388 petition is the improper procedural vehicle for such a request." The court also refused to entertain Paul's petition to the extent that it sought changes to the visitation order entered after the six-month review hearing. On appeal (H028682, his fourth), Paul assigned both determinations as error.

*Further Review Hearing: August 2005*

The juvenile court held further review hearings, including a combined 12- and 18-month review hearing for Son, which it conducted as a contested matter on August 17, 2005. In the order following that hearing, the court conditioned future supervised visitation for Paul on Son's request for visitation, Paul's completion of individual therapy addressing sexual abuse, and joint therapy for Paul and Son. Paul challenged that order in his fifth appeal (H029310).

*Dismissal and Transfer to Family Court*

At a contested hearing held on October 31, 2005, the juvenile court granted the Department's motion to dismiss the dependency. The court concluded that supervision by the Department was no longer necessary, and it issued exit orders to the family court, granting continued physical custody to Gail and barring Paul from visitation or contact. Those orders prompted Paul's sixth appeal (H029527).

*Hearing on Habeas Corpus Petition*

As noted above, in May 2005, this court issued an order to show cause, returnable in the superior court, on Paul's petition for writ of habeas corpus, which claimed ineffective assistance of counsel at the 2003 jurisdictional and

dispositional hearing. The Department filed a return, Paul filed a traverse and an amendment, and a hearing was set for August 2005.

Gail was aware of the hearing date for Paul's habeas corpus claim, as she received notice through several different avenues, including oral references to the upcoming habeas corpus trial at three juvenile court hearings held in August 2005, all of which Gail attended.[4] But Gail never appeared at the habeas corpus hearing, either personally or through counsel.

The evidentiary hearing commenced in superior court on August 25, 2005. Consistent with this court's order to show cause, the hearing was conducted by the same trial judge who heard the original jurisdiction and disposition hearing in 2003, Judge Herlihy. The hearing took place over the course of nine court days, followed by written closing arguments. In December 2005, Judge Herlihy issued an 18-page written order, granting the habeas corpus petition.

At the outset of the hearing, the court entertained a motion to intervene, brought by Paul's former trial attorney, whose performance was placed at issue by the habeas corpus petition. The court denied counsel's motion, but it did allow counsel's attorney to be present during the proceedings. The children also were allowed to be present, through their attorneys, though not as parties.

At the hearing, the court considered evidence relevant to its prior finding that Paul had molested Middle Daughter, which Paul's trial counsel had not explored at the 2003 jurisdictional hearing.

Among the evidence presented was testimony by Frances Gomez of the Aurora, Colorado Police Department, who investigated the 1998 disclosure by Middle Daughter that Paul's penis had touched her vagina. (At the time of the investigation, Gomez was a detective; she later was promoted to sergeant and then lieutenant; she was never demoted, as Gail had claimed.) At the 2003 jurisdiction hearing, one social worker testified to conversations with Gomez during which the detective described Middle Daughter's disclosure as "solid." Testimony by a second social worker cast some doubt on that description. Paul's trial counsel did not contact Gomez. The court concluded: "Had counsel investigated Gomez, she would have learned that Gomez did not find the case to be strong, [that Gomez] found [Middle Daughter's]

---

[4] The trial court sent written notice of the habeas corpus hearing to Gail's former attorney, but by then Gail was representing herself. There is no evidence showing whether Gail's former attorney forwarded the written notice to her. In any event, however, Gail does not contend that she lacked notice of the habeas corpus hearing. (Cf. *In re Moffett* (1936) 13 Cal.App.2d 741, 742 [57 P.2d 538] [court lacked jurisdiction to conduct habeas corpus proceeding where there was no "waiver of service, or voluntary appearance by the district attorney without service"].)

statements to be vague and inconsistent, that Gomez was forced to file an affidavit of probable cause due to a blanket policy by her former supervisor, that she repeatedly told Gail W. about the importance of the medical examination, and that she felt that Gail W. was not cooperating in that respect." The court continued: "This evidence not only impeached Gail W., but also would have directly affected the findings of all the experts."

In addition to Gomez's testimony, other evidence came out at the habeas corpus hearing that Paul's counsel had not adduced at the 2003 jurisdictional hearing. That included evidence that Gail had questioned Middle Daughter prior to her interview by Colorado authorities in a way that undermined the reliability of the toddler's disclosure. The court found fault with trial counsel's "failure to explore" the possibility that Gail's questions "implanted memories" in the child.

"Additionally," the court ruled, "all of the above also impacted the weight of Gail W.'s credibility. The bulk of [Paul's] claims of Gail W.'s inconsistent statements were insignificant, as trial counsel described in her evidentiary hearing testimony. However, Gail's claim that Gomez had been demoted, that Gomez was responsible for the delay in the investigation, that [Gail] cooperated with the investigation, and that Gomez told her that a medical examination was not necessary or 'too late' all bear considerable relevance to the allegation of [Middle Daughter's] molestation by [Paul]."

In its formal order, filed December 9, 2005, the trial court concluded that Paul's trial counsel rendered ineffective assistance and that the cumulative effect of her errors was prejudicial. The court therefore vacated its jurisdictional findings and all subsequent orders, stating that "the jurisdictional order concerning the minors must be vacated and the dispositional, and all subsequent orders, are vacated as moot."

### Subsequent Dismissals

*In this court:* Following the habeas corpus ruling, which vacated all orders in the dependency, a motion was brought in this court to dismiss the three appeals by Paul then still pending. The request for dismissal was supported by the stipulation of all parties—except Gail—that they would not appeal the habeas corpus ruling. By order of January 20, 2006, we dismissed the three pending appeals (H028682, H029310, H029527).

*In the juvenile court:* In April 2006, by formal order, the juvenile court dismissed the dependency petitions and vacated all of its prior orders, including its October 2005 dismissal order. The juvenile court's dismissal order effectively transfers the matter to the family court. It requires the family

court to file and serve Judge Herlihy's habeas corpus ruling. The dismissal order also states: "Custody of the children reverts to the orders of the family court that were in effect before the dependency petitions were filed and this dependency case was commenced in September 2003."

## APPEAL

In February 2006, Gail filed a notice of appeal from the December 2005 habeas corpus decision. She claims that the trial court erred when it failed to accord her party status in the habeas corpus proceeding.

In July 2006, Paul moved this court to dismiss the mother's appeal, arguing that Gail lacks appellate standing to assert that claim, that she had no trial court standing, and that she forfeited her claims by failing to appear and raise them below. Paul also requested that we take judicial notice of the documents attached to his motion, as well as our records in his prior appeals. In a second motion to dismiss, filed just prior to oral argument in March 2007, Paul asserted that this appeal is moot because Gail failed to appeal the April 2006 order dismissing the dependency.

We deferred ruling on Paul's first dismissal motion and his request for judicial notice in order to consider them with the appeal. As to his second dismissal motion, we took it under submission at oral argument.

Having now considered those three motions, we shall grant the first two. We thus take judicial notice as requested by Paul and we grant his motion to dismiss Gail's appeal for lack of standing. In light of our decision to dismiss the appeal for lack of standing, we need not reach the question of mootness.

## DISCUSSION

As a framework for assessing the parents' conflicting claims concerning standing in the habeas corpus proceeding, we begin by setting forth the general principles that govern our analysis. We then apply those principles to the facts of this case.

I. *Legal Principles*

 A. *Habeas Corpus*

■ "The right to file a petition for a writ of habeas corpus is guaranteed by the state Constitution (Cal. Const., art. I, § 11), and regulated by statute ([Pen. Code,] § 1473 et seq.)." (*In re Harris* (1993) 5 Cal.4th 813, 824–825 [21 Cal.Rptr.2d 373, 855 P.2d 391].) "Through a habeas corpus proceeding, a

court may grant relief from various forms of constructive custody, as well as from physical restraints." (*People v. Romero* (1994) 8 Cal.4th 728, 737, fn. 3 [35 Cal.Rptr.2d 270, 883 P.2d 388].) "The statutory purpose of the writ is to inquire into the lawfulness of a person's imprisonment or other restraint of his or liberty." (Appeals and Writs in Criminal Cases (Cont.Ed.Bar 2d ed. 2006 update) Writs in Cal. State Courts Before and After Conviction, § 2.143, p. 484, citing Pen. Code, § 1473.)

### 1. *Use in Proceedings Affecting Children*

Habeas corpus may be "used in various types of child custody matters." (Cal. Criminal Law Procedure and Practice (Cont.Ed.Bar 2006) Writs in Cal. State Courts, § 42.22, p. 1303; see, e.g., *In re Darlice C.* (2003) 105 Cal.App.4th 459, 466 [129 Cal.Rptr.2d 472] [parent is "entitled to seek review of the termination order by petition for writ of habeas corpus"]; *In re Carrie M.* (2001) 90 Cal.App.4th 530, 535 [108 Cal.Rptr.2d 856] [same].) The "writ will lie when a person entitled to custody of a minor child is denied possession thereof." (*In re Barr* (1952) 39 Cal.2d 25, 27 [243 P.2d 787]; cf. *Adoption of Alexander S.* (1988) 44 Cal.3d 857, 867–868 [245 Cal.Rptr. 1, 750 P.2d 778].) In such cases, the person having custody of the child may be a proper respondent. (See, e.g., *In re Lukasik* (1951) 108 Cal.App.2d 438, 446 [239 P.2d 492] [grandmother, who had physical custody of children, was respondent in habeas corpus proceeding brought by mother seeking custody]; *In re Macedo* (1953) 118 Cal.App.2d 276, 277 [257 P.2d 743] [mother, who had actual physical custody, and probation officer, who was given custody by court, were served with an order to show cause in habeas corpus proceeding brought by father seeking custody].)

"Because the rules on habeas corpus petitions evolved in the context of prisoners asserting unlawful confinement or conditions of confinement, they do not fit the dependency context well." (Abbott et al., Cal. Juvenile Dependency Practice (Cont.Ed.Bar 2006 supp.) Appeals and Writs, § 10.113, p. 586.) Nevertheless, habeas corpus petitions are recognized as proper vehicles for raising claims of ineffective assistance of counsel in dependency proceedings. (*In re Kristin H., supra*, 46 Cal.App.4th at pp. 1658, 1663; accord, *In re Carrie M., supra*, 90 Cal.App.4th at pp. 533–534.)

### 2. *Procedural Rules*

Regardless of the nature of the proceeding in which the habeas corpus petition arises, the court "must abide by the procedures set forth in Penal Code sections 1473 through 1508." (*Adoption of Alexander S., supra*, 44 Cal.3d at p. 865; see generally, Appeals and Writs in Criminal Cases, *supra*, § 2.147, pp. 489–492.) Under those statutes, the "habeas corpus proceeding begins

with the filing of a verified petition for a writ of habeas corpus." (*People v. Romero, supra*, 8 Cal.4th at p. 737; see Pen. Code, § 1474.) Whenever "a habeas corpus petition is sufficient on its face (that is, the petition states a prima facie case on a claim that is not procedurally barred), the court is obligated by statute to issue a writ of habeas corpus." (*People v. Romero*, at p. 737.) Alternatively, the court may issue an order to show cause. (*Id.* at p. 738.) "Issuance of an OSC signifies the court's preliminary determination that the petitioner has pleaded sufficient facts that, if true, would entitle him to relief. The Penal Code then contemplates the custodian of the confined person shall file a responsive pleading, called a return, justifying the confinement." (*People v. Duvall* (1995) 9 Cal.4th 464, 475 [37 Cal.Rptr.2d 259, 886 P.2d 1252]; see Pen. Code, § 1480.) "The factual allegations of a return must . . . respond to the allegations of the petition that form the basis of the petitioner's claim that the confinement is unlawful." (*People v. Duvall*, at p. 476.) "Following the filing of the return, the habeas corpus petitioner responds to the facts pleaded therein in a pleading called a traverse." (*Ibid.*; see Pen. Code, § 1484.) Alternatively, "the parties may stipulate that the original habeas corpus petition be treated as a traverse." (*People v. Duvall*, at p. 477.) The writ or order to show cause "is the means by which issues are joined (through the return and traverse) and the need for an evidentiary hearing determined." (*People v. Romero*, at p. 740.)

■ The statutory provisions governing habeas corpus proceedings include directives concerning service. In criminal cases where the petitioner is in custody, "a copy of the application for the writ must in all cases be served upon the district attorney of the county wherein the person is held in custody or restraint" and "no application for the writ can be heard without proof of service in cases where the service is required." (Pen. Code, § 1475; see *In re Moffett, supra*, 13 Cal.App.2d at p. 742.) In other types of cases, where the writ "is directed to any other person, it must be delivered to the sheriff or a marshal, and be by him served upon such person by delivering the copy to him without delay, and make his return on the original to the court of issuance." (Pen. Code, § 1478.)

■ The habeas corpus statutes also address the conduct of hearings. (See Pen. Code, §§ 1483, 1484.) The court has "full power and authority to require and compel the attendance of witnesses, by process of subpoena and attachment, and to do and perform all other acts and things necessary to a full and fair hearing and determination of the case." (Pen. Code, § 1484.) "Once the court has issued a writ of habeas corpus it has the power to dispose of the matter 'as the justice of the case may require.'" (*In re Brindle* (1979) 91 Cal.App.3d 660, 669 [154 Cal.Rptr. 563], quoting Pen. Code, § 1484.) But a writ issued "after a hearing on notice of 24 hours or less, directing compliance by political subdivisions, municipalities and agencies which did not have petitioners in actual or constructive custody, without notice or an

opportunity to be heard, violates the essence of due process requiring reversal" as to those respondents lacking notice. (*In re Brindle*, at p. 674.)

 In cases where the adequacy of representation is at issue, "there is an opportunity in an evidentiary hearing to have trial counsel fully describe his or her reasons for acting or failing to act in the manner complained of." (*People v. Pope* (1979) 23 Cal.3d 412, 426 [152 Cal.Rptr. 732, 590 P.2d 859].) "In a habeas corpus petition alleging incompetent investigation or presentation of evidence by trial counsel, a petitioner generally cannot expect to establish a case for relief solely by relying on testimony, expert or otherwise, describing what evidence might have been discovered and pro-duced by competent counsel. Instead, he must generally produce that evi-dence so the credibility of the witnesses can be tested by cross-examination. (If the prosecution claims it could have refuted that testimony by rebuttal evidence, it may also have to produce the witnesses to prove its claim.) In effect, the petitioner must show us what the trial would have been like, had he been competently represented, so we can compare that with the trial that actually occurred and determine whether it is reasonably probable that the result would have been different." (*In re Fields* (1990) 51 Cal.3d 1063, 1071 [275 Cal.Rptr. 384, 800 P.2d 862].)

The habeas corpus statutes also provide for appeals. In criminal cases, Penal Code section 1506 applies. In other habeas corpus cases, the governing statute is Penal Code section 1507, which provides: "Where an application for a writ of habeas corpus has been made by or on behalf of any person other than a defendant in a criminal case, an appeal may be taken to the court of appeal from a final order of a superior court granting all or any part of the relief sought . . . ." (Pen. Code, § 1507.)

## B. *Appellate Standing*

 The general rule of appellate standing is this: " 'Any aggrieved party' may appeal from an adverse judgment." (*County of Alameda v. Carleson* (1971) 5 Cal.3d 730, 736 [97 Cal.Rptr. 385, 488 P.2d 953], quoting Code Civ. Proc., § 902.) The same rule applies in dependency cases. (See, e.g., *In re Carissa G.* (1999) 76 Cal.App.4th 731, 734 [90 Cal.Rptr.2d 561]; see § 395; Cal. Rules of Court, rule 5.585(b); see generally, Abbott et al., Cal. Juvenile Dependency Practice, *supra*, Appeals and Writs, §§ 10.43–10.44, pp. 514–515.)

### 1. *Appellant Must Be Aggrieved*

"To be aggrieved, a party must have a legally cognizable interest that is injuriously affected by the court's decision." (*In re Barbara R.* (2006) 137

Cal.App.4th 941, 952 [40 Cal.Rptr.3d 687]; cf. *In re Dargo* (1947) 81 Cal.App.2d 205, 207 [183 P.2d 282] [mother and stepfather were "entitled to appeal" disposition of delinquent minor "for the purpose of protecting their own interests as well as those of the minor"].) Conversely, a would-be appellant "lacks standing to raise issues affecting another person's interests." (*In re Gary P.* (1995) 40 Cal.App.4th 875, 876 [46 Cal.Rptr.2d 929].)

### 2. *Appellant Must Be a Party of Record*

In addition to being aggrieved, the person prosecuting an appeal generally must have appeared in the proceeding below. "It is generally held . . . that only parties of record may appeal . . . ." (*County of Alameda v. Carleson, supra,* 5 Cal.3d at p. 736; accord, *In re Joseph G.* (2000) 83 Cal.App.4th 712, 715 [99 Cal.Rptr.2d 915]; see Abbott et al., Cal. Juvenile Dependency Practice, *supra,* Appeals and Writs, § 10.116, p. 589 ["responding party may appeal the grant of a writ of habeas corpus"].) Thus, "one who is denied the right to intervene in an action ordinarily may not appeal from a judgment subsequently entered in the case. . . . Instead, he may appeal from the order denying intervention. . . . Nevertheless, one who is legally 'aggrieved' by a judgment may become a party of record and obtain a right to appeal by moving to vacate the judgment pursuant to Code of Civil Procedure section 663." (*County of Alameda v. Carleson,* at p. 736, citations & fn. omitted.)

## II. *Analysis*

With the foregoing principles in mind, we turn to the case at hand.

### A. *Gail was not a party of record in the habeas corpus proceeding below.*

As the mother of the dependent children here, Gail was a party to the dependency proceeding as a whole. (Cf. *In re Joseph G., supra,* 83 Cal.App.4th at p. 715 [the alleged biological father never became "a party of record in the dependency court" and thus lacked "standing to appeal the order terminating parental rights"].)

Significantly, however, Gail was not a party to the habeas corpus proceeding. The order to show cause, issued by this court, did not name her as a party. Our order commanded only *the Department* to show cause why the relief sought should not be granted. (See *In re Darlice C., supra,* 105 Cal.App.4th at p. 467 [directing the agency to show cause]; cf. *In re Kristin H., supra,* 46 Cal.App.4th at pp. 1672–1673 [directing both "the department and minor" to "file a written return"].) As indicated above, a person with physical custody of the child may be a proper respondent in

habeas corpus proceedings, at least to the extent that the proceeding addresses the legality of the child's detention. (See *In re Lukasik, supra,* 108 Cal.App.2d 438, 446 [court issued a writ of habeas corpus, having found that the "detention of these minors by their paternal grandmother is unlawful"]; cf. *In re Macedo, supra,* 118 Cal.App.2d at pp. 278–279 [court refused to issue a writ, stating that if "the probation officer has improperly permitted the minor child to remain with the mother," as the petitioning father alleged, "his remedy is not a writ of habeas corpus but is more properly an application in the superior court in the divorce proceedings to have the order modified"].) In this case, however, we did not—and do not—perceive any reason to include Gail as a party to Paul's habeas corpus proceeding, since it did not seek a change in custody of the dependent children living with her, a point that we discuss in greater detail later in this opinion, at part II.B.3.

Furthermore, Gail made no attempt to intervene in the habeas corpus proceeding, either by application to this court to modify the order to show cause, or by motion in the trial court to intervene in the proceeding. (See Code Civ. Proc., § 387 [intervention]; Cal. Rules of Court, rule 5.154 [joinder in family law matters].) Nor did she make any attempt after the fact to "become a party of record and obtain a right to appeal by moving to vacate the judgment pursuant to Code of Civil Procedure section 663." (*County of Alameda v. Carleson, supra,* 5 Cal.3d at p. 736.)

■ Given the circumstances before us, we need not speculate about the prospects for success of such efforts in this context. (Cf. *In re Marriage of Williams* (1980) 101 Cal.App.3d 507, 511 [161 Cal.Rptr. 808] [interest of deceased mother's relatives in custody and visitation of children "may have been too remote to satisfy traditional rules for intervention"].) We nevertheless observe that in general civil litigation, intervention "is not a matter of absolute right but is discretionary with the court." (*Squire v. City and County of San Francisco* (1970) 12 Cal.App.3d 974, 978 [91 Cal.Rptr. 347].) "Whether in a particular case intervention should be allowed 'is best determined by a consideration of the facts of that case' [citation], and the decision is ordinarily left to the sound discretion of the trial court [citations]." (*Fireman's Fund Ins. Co. v. Gerlach* (1976) 56 Cal.App.3d 299, 302 [128 Cal.Rptr. 396].) "Several principles should govern the exercise of that discretion. The proposed intervener's ' "interest in the matter in litigation . . . must be of such a direct and immediate character that [he] will either gain or lose by the direct legal operation and effect of the judgment." ' [Citations.] The issues of the action may not be enlarged by the proposed intervention. [Citations.] And, all important, the intervention must be denied if the reasons therefor 'are outweighed by the rights of the original parties to conduct their lawsuit on their own terms.' " (*Id.* at p. 303.) In any event, regardless of whether success is achieved in the trial court, the attempt to intervene could ensure appellate standing. As has been said, "even if [mother] did not have

standing below, she would still be aggrieved by the trial court's ruling that she did not have standing. Thus, she would still have standing to appeal." (*In re Catherine H.* (2002) 102 Cal.App.4th 1284, 1294 [126 Cal.Rptr.2d 342] [by seeking return of child under guardianship via contested dispositional hearing, mother gained appellate standing].)

In this case, given her inaction, Gail has forfeited any claim that she was entitled to participate as a party in the habeas corpus proceeding. As the California Supreme Court recently reaffirmed, "a reviewing court ordinarily will not consider a challenge to a ruling if an objection could have been but was not made in the trial court." (*In re S.B.* (2004) 32 Cal.4th 1287, 1293 [13 Cal.Rptr.3d 786, 90 P.3d 746].) "Dependency matters are not exempt from this rule." (*Ibid.*) "The purpose of this rule is to encourage parties to bring errors to the attention of the trial court, so that they may be corrected." (*Ibid.*) A party cannot " 'deliberately stand by in silence and thereby permit the proceedings to reach a conclusion in which the party could acquiesce if favorable and avoid if unfavorable.' " (*In re Dakota S.* (2000) 85 Cal.App.4th 494, 502 [102 Cal.Rptr.2d 196]; cf. *In re Hochberg* (1970) 2 Cal.3d 870, 876 [87 Cal.Rptr. 681, 471 P.2d 1] ["the People remained silent when the superior court at the habeas corpus hearing announced its refusal to decide the factual issues before it; they are not now entitled to urge that if the court had found the facts its findings would have been favorable to them"].)

### B. *Gail is not legally aggrieved by the challenged ruling.*

Despite our conclusion that Gail forfeited her claim to party status below, we nevertheless reach the merits of her appellate standing claim. We do so out of concern that the narrow scope of our order to show cause may have deterred her from taking action to intervene, particularly given her propria persona status, and because the only official written notice of the habeas corpus hearing that she received was sent to her former attorney.

On the merits, we conclude, Gail cannot satisfy the principal criterion for appellate standing—a "legally cognizable interest that is injuriously affected by the court's decision." (*In re Barbara R., supra,* 137 Cal.App.4th at p. 952.) Simply put, although Gail strenuously contests the habeas corpus ruling, she is not *legally aggrieved* by it.

### 1. *The habeas corpus proceeding did not operate as a dismissal of the dependency.*

Gail argues that the habeas corpus proceeding was the functional equivalent of a dismissal, which injuriously affected her interests. As she points out: "Standing depends on the nature of the party's interests, not the phrasing of

the argument." (*In re Daniel H.* (2002) 99 Cal.App.4th 804, 810 [121 Cal.Rptr.2d 475] [parent lacked standing to assert ineffectiveness of child's counsel on sibling issues, whether raised in direct appeal or as habeas corpus].) Here, she contends: "Ineffectiveness of counsel was merely the form, while the nature of the proceeding was to press an all out assault on the prior findings of the dependency court which had been based on Gail's allegations and evidence."

We reject Gail's arguments. The evidentiary hearing on a petition for writ of habeas corpus is a special proceeding, held pursuant to procedural rules set forth in the Penal Code. (Pen. Code, §§ 1473–1508, contained in Pen. Code, pt. 2 [Of Criminal Procedure], tit. 12 [Of Special Proceedings of a Criminal Nature], ch. 1 [Of the Writ of Habeas Corpus].) Juvenile dependency proceedings, by contrast, "are special proceedings with their own set of rules, governed, in general, by the Welfare and Institutions Code." (*In re Chantal S.* (1996) 13 Cal.4th 196, 200 [51 Cal.Rptr.2d 866, 913 P.2d 1075].) "The proceedings ' "are civil in nature, designed not to prosecute a parent, but to protect the child." ' " (*In re Charles T.* (2002) 102 Cal.App.4th 869, 875 [125 Cal.Rptr.2d 868], italics omitted.)

The distinct nature of the habeas corpus proceeding is evident here. First, the hearing was conducted in superior court not juvenile court. Second, the nominal scope of the inquiry at the habeas corpus hearing was narrow, concerned only with representation. As the court observed at the commencement of the habeas corpus hearing, the issues "to be dealt with in the habeas corpus proceeding are framed by the petition, the return and the traverse" and thus were limited to counsel's performance and any resulting prejudice. Third, while the habeas corpus hearing was underway, the ongoing dependency progressed on its own procedural track, presided over by a different judicial officer. Indeed, the juvenile court granted the Department's motion to dismiss the dependency in October 2005, with exit orders to the family court, before the superior court ruled in the separate habeas corpus hearing.

██ While we acknowledge that the habeas corpus ruling ultimately led to a final dismissal of the dependency proceeding in April 2006, we decline to characterize the two as functional equivalents. As has been said, "reversal of an order in a dependency proceeding does not necessarily mean that the status quo is reinstated and that the child can no longer be protected. A reversal because of ineffective assistance of counsel does not preclude further dependency proceedings in juvenile court; it simply requires that the proceedings be reconducted because the parents were not properly represented." (*In re Emilye A.* (1992) 9 Cal.App.4th 1695, 1707, fn. 9 [12 Cal.Rptr.2d 294].) To the extent that the proceeding operated—in Gail's words—as "an all out assault on the prior findings of the dependency court," that circumstance

arises from the defects in Paul's representation, which contributed to those findings. In any event, even if we equated the habeas corpus order with dismissal, that circumstance would not accord Gail appellate standing in this case, a point we explain next.

### 2. *Gail's proffered authority is unpersuasive.*

In pressing her argument for standing, Gail relies on *In re Lauren P.* (1996) 44 Cal.App.4th 763, 770 [52 Cal.Rptr.2d 170], which was decided by the Fourth District, Division Two. In *Lauren P.*, the mother appealed the juvenile court order dismissing the dependency petition. (*Id.* at p. 767.) In response to the appellate court's request for supplemental briefing on the questions of appealability and the mother's appellate standing, all parties conceded both points. (*Ibid.*)

Addressing the standing issue, the *Lauren P.* court observed: "It could be argued that the only party aggrieved by the dismissal of the petition was [the agency]. A juvenile dependency petition can only be filed by a public agency." (*In re Lauren P., supra,* 44 Cal.App.4th at p. 768, citing §§ 325, 272.) Ultimately, however, the court concluded: "The state's exclusive power to initiate a dependency proceeding does not equate to an exclusive interest in the outcome of the proceeding." (*Id.* at p. 770.) It determined that the mother "had a natural interest in obtaining the state's protection for her daughter against future sexual abuse. Dismissal of the petition injuriously affected this interest." (*Id.* at p. 771.) The court thus held that the mother was "sufficiently aggrieved by the dismissal order to have standing to appeal from it." (*Ibid.*)

As Paul points out, however, *Lauren P.* was questioned by a different division of the same court that decided it, in the case of *In re Carissa G.* (See *In re Carissa G., supra,* 76 Cal.App.4th 731, decided by the Fourth Dist., Div. Three.) As the *Carissa G.* court put it, "we cannot agree with *Lauren P.*'s reasoning. Mother concededly has a fundamental right to parent minor. But the juvenile court's dismissal of the petition did not impact that right." (*Id.* at p. 736; see also *In re Eric H.* (1997) 54 Cal.App.4th 955, 968 [63 Cal.Rptr.2d 230] [mother not entitled to present evidence at dismissal hearing, since dismissal of dependency "did not impact [her] fundamental right to parent" her child].) As the *Carissa G.* court further explained, "the mere fact a parent takes a position on a matter at issue in a juvenile dependency case that affects his or her child does not alone constitute a sufficient reason to establish standing to challenge an adverse ruling on it." (*In re Carissa G.*, at p. 736.) We find *Carissa G.* persuasive on this point.

Moreover, we observe, *Lauren P.* arose in a different procedural posture than did our case. In *Lauren P.*, the dissatisfied parent appealed from an order directly and explicitly dismissing the dependency petition. (*In re Lauren P., supra,* 44 Cal.App.4th at p. 767.) In this case, by contrast, Gail made no attempt to appeal the juvenile court's ultimate dismissal order, entered in April 2006. Instead, she attacks the earlier habeas corpus ruling.[5] Our case thus is procedurally distinct from *Lauren P.*

For all these reasons, Gail's reliance on *Lauren P.* is misplaced.

> 3. *The ruling did not affect Gail's interest in maintaining custody of the children.*

Apart from *Lauren P.*'s analytic weaknesses and its dissimilar procedural posture, an important factual distinction separates that case and this one: the children's custody status.

In *Lauren P.*, at the time of dismissal, the child's "custody remained unresolved." (*In re Lauren P., supra,* 44 Cal.App.4th at p. 771.) In this case, by contrast, Gail's right to physical custody of the children was settled, initially by the family court orders preceding the dependency, later by the October 2005 exit orders transferring the case back to family court with the then extant juvenile court orders in place, and ultimately by the April 2006 exit orders transferring the case to family court in the 2003 status quo ante. (See *In re Carissa G., supra,* 76 Cal.App.4th at p. 736 ["dismissal of the petition did not alter minor's custody status"]; *In re Tomi C.* (1990) 218 Cal.App.3d 694, 698 [267 Cal.Rptr. 210] [same].)

Given the limited scope of the inquiry at the habeas corpus hearing, it could not affect the children's custodial status, regardless of its outcome. For that reason, Gail's interest in maintaining custody of her children was not directly at issue in the habeas corpus hearing.[6]

---

[5] Because Gail did not attempt to appeal the April 2006 dismissal order, we need not consider here whether such dismissal orders are appealable. (See, e.g., *In re Carissa G., supra,* 76 Cal.App.4th at p. 738 [holding that "mother lacks standing to appeal the juvenile court's dismissal of the juvenile dependency petition"].) Nor is it necessary for us to determine whether Gail's failure to appeal the dismissal order renders this appeal moot, as Paul asserts. Here, we need only apply the fundamental legal tenet that such collateral attacks are disfavored. (Cf., e.g., *In re Daniel H., supra,* 99 Cal.App.4th at p. 810 [finding "no rational basis for denying parents the right to raise sibling visitation directly but permitting them to raise it indirectly by way of an ineffective assistance of counsel claim"].)

[6] We acknowledge that Gail may have suffered indirect harm from the habeas corpus ruling, since it operated to vacate the stay-away orders and return the matter to joint custody status. As explained above, however, there must be "a legally cognizable immediate and substantial interest which is injuriously affected by the court's decision. A nominal interest or remote

### 4. *The ruling did not otherwise affect Gail's parental interests.*

For purposes of appellate standing in dependency cases, a parent is aggrieved by a juvenile court order that injuriously affects the parent-child relationship. (See, e.g., *In re Charles T., supra*, 102 Cal.App.4th at p. 873 [failure to appoint guardian ad litem for child affects parent-child relationship; parent therefore had standing].) "The parent's primary interest in dependency is usually reunification. While the case is still in reunification, the parent's standing to assert errors affecting the rights of the other parent or the child . . . is fairly clear because there may be shared interests." (Abbott et al., Cal. Juvenile Dependency Practice, *supra*, Appeals and Writs, § 10.44, p. 514; see, e.g., *In re Barbara R., supra*, 137 Cal.App.4th at p. 953 [mother had standing to attack minor's representation as incompetent, where actions by minor's counsel could affect permanent plan and thus parental interest in reunification].)

Conversely, a parent is not aggrieved when the challenged order has no impact on the parent-child relationship, but instead affects someone else. A parent "lacks standing to raise issues affecting another person's interests." (*In re Gary P., supra*, 40 Cal.App.4th at p. 876.) In other words, "an appellant must demonstrate error affecting his or her own interests in order to have standing to appeal." (*In re Crystal J.* (2001) 92 Cal.App.4th 186, 189 [111 Cal.Rptr.2d 646].) This proposition has been repeated numerous times, in many different factual contexts. Thus, for example, a dependent minor was not aggrieved by the denial of de facto parent status for her aunt and uncle. (*Id.* at p. 190.) Likewise, a mother was "not aggrieved by the fact the juvenile court's judgment may sever the grandmother's ties with minors." (*In re Gary P.*, at p. 877.) Similarly, a parent is not aggrieved by the fact that the order terminating parental rights also severed the minor's ties with his foster family. (*In re Devin M.* (1997) 58 Cal.App.4th 1538, 1541 [68 Cal.Rptr.2d 666].) And prior to a 2001 statutory change,[7] case law "consistently" held that "the minor's interest in maintaining a relationship with siblings is unrelated to the parents' interest in reunification." (*In re Daniel H., supra*, 99 Cal.App.4th at p. 809; see now *In re Erik P.* (2002) 104 Cal.App.4th 395, 402

---

consequence of the ruling does not satisfy this requirement." (*In re Carissa G., supra*, 76 Cal.App.4th at p. 734; see *id.* at p. 736 [no such injury; dismissal of the dependency altered the minor's custody status "only slightly" where father went from supervised to unsupervised visitation].) We can envision a situation where one parent's custodial interests may be directly affected by the other parent's habeas corpus proceeding, but that is not our case. Here, there is no sufficiently direct injury to Gail's custodial interests to support standing. Furthermore, to the extent that she has suffered an indirect injury, Gail is not without a remedy: she will have the opportunity to litigate custody and visitation issues in family court. (See *id.* at p. 736.)

[7] See section 366.26, subdivision (c)(1)(E), added by Statutes 2001, chapter 747, section 3, which introduced the sibling bond exception to adoption.

[127 Cal.Rptr.2d 922] [in light of statutory change, parental standing to assert sibling bond is now recognized].)

Although none of the foregoing cases mirrors our own in terms of procedural context, the principle of law articulated there carries equal weight here. In this case, Gail has identified no direct injury to her parental relationship with her children resulting from the habeas corpus ruling, nor do we perceive any. Other than Paul, only one person had interests arguably vulnerable to harm in the habeas corpus proceeding—his original trial attorney. Gail lacks standing to raise issues affecting only Paul or his counsel. (Cf. *In re Daniel H., supra*, 99 Cal.App.4th at p. 811 ["parent must show that [minor's] counsel's alleged conflict of interest actually affected the parent's interests"].)

Contrary to Gail's suggestion, this is not a case where her interests "interweave" with Paul's, such that "either party has standing to litigate issues that . . . impact upon the related interests." (*In re Patricia E.* (1985) 174 Cal.App.3d 1, 6 [219 Cal.Rptr. 783], disapproved on another point in *In re Celine R.* (2003) 31 Cal.4th 45, 60 [1 Cal.Rptr.3d 432, 71 P.3d 787].) "In the absence of such intertwined interests, 'a parent is precluded from raising issues on appeal which did not affect his or her own rights.' " (*In re Caitlin B.* (2000) 78 Cal.App.4th 1190, 1193 [93 Cal.Rptr.2d 480], quoting *In re Jasmine J.* (1996) 46 Cal.App.4th 1802, 1806 [54 Cal.Rptr.2d 560].) In this case, far from sharing Paul's concern about adequate representation, Gail's self-described interest "was not technically whether or not Paul's counsel had performed competently, but rather that regardless of the representation, the allegations of sexual abuse were supported by evidence sufficient to uphold the prior orders of the dependency court and retain its jurisdiction of the matter." Presumably, the Department—respondent in the habeas corpus proceeding—had a similar interest in defending its jurisdiction. (Cf. *In re Emilye A., supra*, 9 Cal.App.4th at p. 1709 ["the state's interest in the child's welfare . . . may also best be served by making sure that the parent is adequately represented at hearings involving that welfare"].)

As explained above, "the mere fact a parent takes a position on a matter at issue in a juvenile dependency case" does not "establish standing to challenge an adverse ruling on it." (*In re Carissa G., supra*, 76 Cal.App.4th at p. 736.) Although Gail "concededly has a fundamental right to parent" her children, the habeas corpus ruling "did not impact that right." (*Ibid.*)

5. *The ruling did not affect any other cognizable interest of Gail's.*

Gail indirectly asserts a reputational interest in the outcome of the habeas corpus proceeding. She defends her credibility "with regard to her allegations

of abuse and her statements about the investigation of them" and she urges "the centrality" of her credibility in the habeas corpus proceeding, citing six short statements from the court's 18-page ruling.

Gail's credibility is not the issue. The objective is "an *accurate* and just decision in the child's best interests," which the system tries to achieve through adversarial dependency proceedings where each party is competently represented. (*In re Emilye A., supra*, 9 Cal.App.4th at p. 1709, italics added.) In any event, to the extent that Gail's reputational interests were at stake, any harm to her credibility is—at best—a "remote consequence of the ruling" that "does not satisfy" the requirements for standing. (*In re Carissa G., supra*, 76 Cal.App.4th at p. 734.)

Gail also claims that she is aggrieved because "the entire case [was] repositioned as if the jurisdictional hearing had never happened. This necessarily meant that Gail would have to again assert her claims against Paul and that the orders barring his visitation were null and void." As a result, she complains, "presently Gail is in a far different posture than she had been . . . when the October 2005 order placed full legal and physical custody in her and barred visitation by Paul."

Gail's complaint about the new status of the case offers no basis for finding that she is aggrieved. As noted above, a reversal based on ineffective assistance "does not necessarily mean that the status quo is reinstated and that the child can no longer be protected." (*In re Emilye A., supra*, 9 Cal.App.4th at p. 1707, fn. 9.) An interested party "may make an application to the [agency] to initiate section 300 proceedings." (*In re Tomi C., supra*, 218 Cal.App.3d at p. 698, citing § 329.) And "if the agency fails or refuses to file a petition, the applicant can seek judicial review of its decision." (*In re Lauren P., supra*, 44 Cal.App.4th at p. 768, citing § 331.) "Issues concerning custody and visitation can also be dealt with in a family law proceeding." (*In re Carissa G., supra*, 76 Cal.App.4th at p. 736.) Gail thus is not aggrieved simply because the case has been returned to family court, from whence it came in 2003. (Cf. *In re Eric H., supra*, 54 Cal.App.4th at p. 969.)

### C. *Interests of Other Parties to the Dependency*

In closing, we feel compelled to touch briefly on the interests of other members of the W. family involved in the dependency here.

We first address the interests of the W. children. As has been said, the welfare of dependent children may "best be served by making sure that the parent is adequately represented at hearings involving that welfare." (*In re Emilye A., supra*, 9 Cal.App.4th at p. 1709.) "If, as our adversary system

presupposes, accurate and just results are most likely to be obtained through the equal contest of opposed interests, the State's interest in the child's welfare may perhaps best be served by a hearing in which both the parent and the State acting for the child are represented" by competent counsel. (*Lassiter v. Department of Social Services* (1981) 452 U.S. 18, 28 [68 L.Ed.2d 640, 101 S.Ct. 2153]; see *In re Emilye A.*, at p. 1710 [quoting *Lassiter*].) Absent such representation, there may be an unacceptably "high risk of an erroneous and unjust decision at the jurisdiction hearing, which decision would be contrary to the best interests of the minor" as well as those of the affected parent. (*In re Emilye A.*, at p. 1710.)

That brings us to Paul's interests. Like Gail, he has a fundamental "interest in maintaining a normal parent/child relationship" with his children. (*In re Emilye A., supra*, 9 Cal.App.4th at p. 1708.) Furthermore, he has "an additional important personal interest to protect" since the dependency petition was based on his "alleged criminal activity." (*Id.* at pp. 1708, 1709.) To protect those interests, Paul had the right to competent representation at the jurisdictional/dispositional hearing, which deprived him of the "ability to parent" for "a substantial period of time," and which could have formed "the basis for subsequent termination of the relationship . . . ." (*Id.* at p. 1708.) Adequate representation was critical for Paul "given the importance of (1) [his] continuing and intense interests in maintaining an unrestricted relationship with [his children] . . . and in avoiding a finding that he had engaged in criminal acts, (2) the state's interest in making sure the child's welfare is protected by a correct decision, and (3) the potential for an erroneous decision if [he] was not represented" by competent counsel. (*Id.* at p. 1711.) Those were the interests at stake in the habeas corpus proceeding.

## SUMMARY OF CONCLUSIONS

 Assuming that Gail has not forfeited her claim to party status by failing to press it below, she cannot satisfy the principal criterion for appellate standing, because she is not legally aggrieved by the habeas corpus ruling. Gail thus lacks standing to prosecute this appeal.

## DISPOSITION

The appeal is dismissed.

Bamattre-Manoukian, Acting P. J., and Duffy, J., concurred.

**BAMATTRE-MANOUKIAN, Acting P. J.,** Concurring.—I concur in the majority opinion. I agree that the mother in this case is not a proper party in a

habeas corpus proceeding initiated by the father to determine whether he received effective representation of counsel. And I agree that the mother is not aggrieved, as that term is used in the law, by the outcome of the proceeding. I therefore agree with the majority's conclusion that the mother does not have standing to pursue an appeal from the trial court's order in the habeas corpus proceeding, and that her appeal must accordingly be dismissed.

I write separately to expand upon the discussion of a point made in the majority opinion, that the rules governing habeas corpus, because they were developed in the context of criminal law, " 'do not fit the dependency context well.' " (Maj. opn., *ante*, at p. 53.) The use of habeas corpus in dependency cases to raise claims of ineffective assistance of counsel is a relatively recent development in the law. (See *In re Kristin H.* (1996) 46 Cal.App.4th 1635 [54 Cal.Rptr.2d 722].) However, such claims are being brought before us with increasing regularity. I therefore believe it is worthwhile, and perhaps would be helpful to practitioners in the dependency field, and to the family members they represent, to attempt to articulate some general guidelines for the use of the habeas corpus writ proceeding to raise a claim of ineffective assistance of counsel in a dependency case.

It is now well established that indigent parents whose children are the subject of dependency proceedings and may be placed out of the home have a statutory, and in some cases a due process, right to appointed counsel. (Welf. & Inst. Code, § 317, subd. (b); Cal. Rules of Court, rule 5.534(h)(1)(B); *In re Kristin H., supra,* 46 Cal.App.4th at p. 1659 (*Kristin H.*).) A parent who has a right to appointed counsel is entitled to *competent* counsel; otherwise " '*it will be a hollow right.*' [Citations.]" (*Kristin H., supra,* 46 Cal.App.4th at p. 1659.) Indeed California law expressly provides that "[a]ll parties who are represented by counsel at dependency proceedings shall be entitled to competent counsel." (Welf. & Inst. Code, § 317.5, subd. (a).)

In *Kristin H., supra,* 46 Cal.App.4th 1635, we found that this statutory right to counsel "must include the right to seek review of claims of incompetence of counsel." (*Id.* at p. 1662.) We further found in *Kristin H.* that review of claims of incompetence of counsel in dependency proceedings can be sought through a timely petition for a writ of habeas corpus. (*Id.* at p. 1667.) As in the criminal context, a petitioner must meet a two-part test: petitioner must show that "counsel failed to act in a manner to be expected of reasonably competent attorneys practicing in the field of juvenile dependency law" and must also "establish that the claimed error was prejudicial." (*Id.* at pp. 1667–1668.) The test for prejudice is whether it is " 'reasonably probable' " that a more favorable result would have occurred in the absence of counsel's alleged failings. (*Ibid.*; see *People v. Fosselman* (1983) 33 Cal.3d 572, 584 [189 Cal.Rptr. 855, 659 P.2d 1144]; *People v. Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

The circumstances of a habeas corpus petitioner in a dependency setting are somewhat different from those of a criminal defendant, who is generally seeking release from confinement. In the criminal context, the parties are well defined. The petition alleges that the petitioner is unlawfully "imprisoned or restrained" and names the person or entity who is the custodian of his or her confinement. (Pen. Code, § 1474.) The custodian of petitioner's confinement files the written response, or "return," setting forth the legal basis for the restraint. (Pen. Code, § 1480.) In a dependency proceeding, on the other hand, although the underlying dependency petition may contain allegations of criminal activity, the proceedings are civil in nature. (*In re Charles T.* (2002) 102 Cal.App.4th 869, 875 [125 Cal.Rptr.2d 868].) There is no prosecution by the state, or resulting confinement or restraint on liberty similar to the criminal context. In addition, the dependency proceeding involves an entire family, whose interests are both diverse and intertwined.

As the majority points out, habeas corpus has been used historically in civil proceedings involving child custody disputes, such as those between parents in a divorce proceeding (*In re Barr* (1952) 39 Cal.2d 25 [243 P.2d 787]; *In re Macedo* (1953) 118 Cal.App.2d 276 [257 P.2d 743]), between a parent and a guardian (*In re Lukasik* (1951) 108 Cal.App.2d 438 [239 P.2d 492]), or between a birth parent and adoptive parents. (*Adoption of Alexander S.* (1988) 44 Cal.3d 857 [245 Cal.Rptr. 1, 750 P.2d 778].) In those cases, which do not necessarily involve claims of ineffective assistance of counsel, courts have found that "the writ will lie when a person entitled to custody of a minor child is denied possession thereof." (*In re Barr, supra*, 39 Cal.2d at p. 27.) Thus, the party claiming custody is the petitioner, who alleges that he or she is wrongfully deprived of the child, and the respondents in the proceeding are the party or parties who have custody of the child.

While these cases have some parallels to the dependency setting, they do not provide an ideal model for a habeas corpus proceeding raising ineffective assistance of counsel in a dependency setting. Although the protection of the child or children is a central issue in dependency proceedings, the child's custody is generally not the direct focus of the petition for a writ of habeas corpus raising ineffective assistance of counsel, and the person who has custody may not be a party to the habeas corpus proceedings. In the case before us, for instance, although the mother had custody of the three girls, she was not a proper party to the habeas corpus proceedings initiated by the father, as the majority opinion has concluded. A petition for a writ of habeas corpus in a dependency proceeding can be brought by any party entitled to counsel, and in a variety of circumstances. The child or children can be in out-of-home care under the custody of the social services agency, or can be, as was the case here with the petitioner's daughters, in the custody of the other parent. Furthermore, unlike a criminal habeas corpus proceeding, which generally occurs after the underlying trial has concluded, in the dependency

setting a challenge to counsel's competence can arise at any stage of the proceedings, and the proceedings then continue along a statutory timeline. The focus of a dependency ultimately shifts to the child's interests in permanency, and any evaluation of the parent's rights in the later stages of the proceedings must take into account that the purpose and objective of dependency law is to achieve a safe and permanent home for the child. (See, e.g., *In re Arturo A.* (1992) 8 Cal.App.4th 229, 242–246 [10 Cal.Rptr.2d 131].)

Bearing these considerations in mind, and acknowledging that some of the Penal Code rules governing habeas corpus (Pen. Code, §§ 1473–1508) are specific to the criminal setting, I offer the following suggestions to provide guidance to juvenile court judges and practitioners regarding the use of habeas corpus proceedings raising claims of ineffective assistance of counsel in dependency cases.

The proceeding "begins with the filing of a verified petition for a writ of habeas corpus." (*People v. Romero* (1994) 8 Cal.4th 728, 737 [35 Cal.Rptr.2d 270, 883 P.2d 388].) A habeas corpus petition can be filed in the superior court or in a Court of Appeal.[1] A petition claiming ineffective assistance of counsel filed in the Court of Appeal must be filed either concurrently with the appeal from the particular order, or during the pendency of the appeal from that order. "Habeas corpus may not be utilized to challenge antecedent final orders." (*In re Carrie M.* (2001) 90 Cal.App.4th 530, 534 [108 Cal.Rptr.2d 856].) A petition for habeas corpus is proper where the claims will require consideration of matters outside the appellate record.[2] (*In re Darlice C.* (2003) 105 Cal.App.4th 459, 463 [129 Cal.Rptr.2d 472].) The habeas corpus petitioner in a dependency proceeding will generally not be "imprisoned or restrained" (Pen. Code, § 1474); however, the allegations should include facts describing the child's custody, the petitioner's interest in the child, and why the petitioner is claiming that the custody of the child is unlawful. It should state "fully and with particularity" the grounds for relief under the two-part test summarized above, namely that counsel's representation fell below reasonable standards and that it is reasonably probable that a different result would have occurred in the absence of the error. (*People v. Duvall* (1995) 9 Cal.4th 464, 474 [37 Cal.Rptr.2d 259, 886 P.2d 1252]; see *Kristin H., supra,* 46 Cal.App.4th at pp. 1667–1668.) " 'Conclusory allegations made without

---

[1] The California Constitution provides that the superior court, Courts of Appeal and the California Supreme Court all have original jurisdiction to grant habeas corpus relief. (Cal. Const., art. VI, § 10.) (See Abbott et al., Cal. Juvenile Dependency Practice (Cont.Ed.Bar 2007 supp.) Appeals and Writs, § 10.112, p. 783.)

[2] In some appellate districts, appellate counsel's appointment includes the authority to pursue a habeas corpus writ. In others, this authority must be obtained from the court that appointed counsel. (See Abbott et al., Cal. Juvenile Dependency Practice, *supra,* Appeals and Writs, § 10.110, p. 780.)

any explanation of the basis for the allegations do not warrant relief, let alone an evidentiary hearing.' [Citation.]" (*People v. Duvall, supra*, 9 Cal.4th at p. 474.) Since the dependency proceeding is an ongoing process, the petition should include allegations describing the child's current situation. (See Abbott et al., Cal. Juvenile Dependency Practice, *supra*, Appeals and Writs, § 10.113, pp. 786–787.) The petition should "include copies of reasonably available documentary evidence supporting the claim," including affidavits, declarations, and pertinent portions of the trial transcript. (*People v. Duvall, supra*, 9 Cal.4th at p. 474; see generally Cal. Rules of Court, rules 8.490, 8.380, 8.384.) The petition should be served on all parties to the dependency proceeding, or on their attorneys if represented, and on the juvenile court. (Cal. Rules of Court, rule 8.25.)

The habeas corpus petitioner bears a "heavy burden" to plead facts sufficient to warrant relief. (*People v. Duvall, supra*, 9 Cal.4th at p. 474.) If a reviewing court finds that the petition does not state a prima facie case for relief, the court will summarily deny the petition. (See *Board of Prison Terms v. Superior Court* (2005) 130 Cal.App.4th 1212, 1233–1236 [31 Cal.Rptr.3d 70].) In order to assist the court in determining whether the petition states a prima facie case, the court may request informal opposition. (*People v. Romero, supra*, 8 Cal.4th at p. 737; Cal. Rules of Court, rule 8.380(c).) If the court requests opposition, and opposition is filed, the petitioner then has the opportunity to file a reply. (Cal. Rules of Court, rule 8.380(c)(3).) This informal response procedure is not a substitute for formal pleadings; rather, it "performs a screening function," to assist the court in evaluating the sufficiency of the petition. (*People v. Romero, supra*, 8 Cal.4th at p. 742.)

If the reviewing court finds that the petitioner states a prima facie case for relief, the court will issue an order to show cause why the relief sought should not be granted. "[T]he order to show cause does not '*establish* a prima facie determination that petitioner is entitled to the relief requested. Rather, it signifies our *preliminary determination* that the petitioner has made a prima facie statement of specific facts which, if established, entitle [petitioner] to habeas corpus relief under existing law." ' " (*Board of Prison Terms v. Superior Court, supra*, 130 Cal.App.4th at p. 1234.) The reviewing court may determine that factual disputes regarding counsel's performance and the question of prejudice are most appropriately addressed in the juvenile dependency court where the hearing was initially held. In such a case, the order to show cause will be returnable in the superior court, preferably before the same judge who presided over the hearing where the alleged error occurred. (Pen. Code, § 1508.) This effectively transfers the proceeding to the superior court, and that court will conduct any evidentiary hearing that may be required. (*People v. Romero, supra*, 8 Cal.4th at p. 740.)

The responding party in a habeas corpus proceeding in a dependency matter is generally the social services agency, which is the constructive custodian of the child or children. The order to show cause will direct the respondent to file a "return," responding to the claims raised in the petition and the factual bases for those claims. (*Board of Prison Terms v. Superior Court, supra,* 130 Cal.App.4th at p. 1234.) The return may also provide documentary evidence in order to enable the court to determine which issues are truly disputed. (*Ibid.*) The petitioner then files a reply, or "traverse," controverting the issues raised in the return. "Facts set forth in the return that are not disputed in the traverse are deemed true." (*People v. Duvall, supra,* 9 Cal.4th at p. 477.) In the alternative, the parties may stipulate to treat the petition as a traverse, or petitioner may reassert the factual allegations set forth in the petition. (*Ibid.*) Although the traverse may allege additional facts to support the claim on which the order to show cause has issued, the petitioner in a traverse may not expand the scope of the proceedings by introducing additional claims or different factual bases for those claims. (*People v. Duvall, supra,* 9 Cal.4th at p. 478.) "[A] habeas corpus petitioner may not raise additional issues in the traverse." (*Board of Prison Terms v. Superior Court, supra,* 130 Cal.App.4th at p. 1235.) The return and traverse become the primary pleadings through which issues are joined in a habeas corpus proceeding. (*People v. Romero, supra,* 8 Cal.4th at p. 739.) Based upon those pleadings, the court decides whether an evidentiary hearing is required to resolve factual issues necessary to determine if the petitioner is entitled to relief. (*Kristin H., supra,* 46 Cal.App.4th at pp. 1672–1673; *People v. Romero, supra,* 8 Cal.4th at pp. 738–740.) "[T]he issues to be addressed may not extend beyond the claims alleged in the habeas corpus petition." (*Board of Prison Terms v. Superior Court, supra,* 130 Cal.App.4th at p. 1235.)

I believe the best practice is that all parties to the dependency proceeding, particularly the party who has custody of the child or children, should be served with notice of the writ proceedings and additional notice in the event that an evidentiary hearing is to be held on the merits of the petition.[3] The juvenile court conducting the hearing may, in its discretion, entertain a motion to intervene by any party to the dependency (Code Civ. Proc., § 387), and may grant such a motion upon a showing that the circumstances, the interests of the child, and the interests of such party warrant intervention. Otherwise, the court may deny intervention, or, as the trial court did in this case, may deny intervention but allow the party or parties or their attorneys, as well as the attorney whose representation is at issue, to be present during

---

[3] In the case before us, it appears that the mother was unrepresented at the time notice of the hearing was sent, and it was sent to her former attorney. It is unclear whether her former attorney communicated this to her, or whether formal notice was forwarded to her. In any case, she does not assert that she did not receive notice.

the proceedings. If any party to the dependency is unrepresented and participates in the hearing, the court may appoint counsel.

At the evidentiary hearing, the petitioner and respondent have the opportunity to produce witnesses and other evidence to support the allegations in their respective pleadings, and trial counsel has the opportunity to explain the reasons for acting or failing to act in the manner complained of. (*People v. Pope* (1979) 23 Cal.3d 412, 426 [152 Cal.Rptr. 732, 590 P.2d 859].) The petitioner has the burden of proving the factual contentions contained in the petition by a preponderance of the evidence. (*In re Merkle* (1960) 182 Cal.App.2d 46, 48 [5 Cal.Rptr. 745].) The petitioner must further show that he or she has "suffered essential unfairness and injustice" and this claim must be shown "not as a matter of speculation but as a demonstrable reality." (*Id.* at p. 49.) As noted in the majority opinion, petitioner's task in effect is to demonstrate "what the trial would have been like, had [petitioner] been competently represented, so [the court] can compare that with the trial that actually occurred and determine whether it is reasonably probable that the result would have been different." (*In re Fields* (1990) 51 Cal.3d 1063, 1071 [275 Cal.Rptr. 384, 800 P.2d 862].)

As in criminal habeas corpus proceedings, the court conducting the hearing is to have broad discretion and full power and authority to order discovery and to issue all other orders "necessary to a full and fair hearing and determination of the case." (Pen. Code, § 1484.) If the court determines that the petitioner has met the requisite burden, the court will grant the petition, which generally results in reversing or vacating the relevant order or judgment in the case. A reversal because of ineffective assistance of counsel "does not preclude further dependency proceedings in juvenile court; it simply requires that the proceedings be reconducted because the parents were not properly represented." (*In re Emilye A.* (1992) 9 Cal.App.4th 1695, 1707, fn. 9 [12 Cal.Rptr.2d 294].) Finally, as we have decided today, only the parties to the habeas corpus proceeding have standing to appeal the order granting the petition. (Pen. Code, §§ 1506, 1507.)

In closing, I note that the proceedings in this case were conducted with exemplary thoroughness, and in conformance with established rules governing habeas corpus. My comments are intended simply to provide guidelines to assist courts and practitioners in this developing area of the law. A timely petition for a writ of habeas corpus to raise a claim of ineffective assistance of counsel is available to the parties in a dependency proceeding, who are entitled to competent counsel. As always in dependency proceedings, the

child's interest in having a safe and stable home is a paramount concern; however, this interest is always best served by ensuring that all parties to the proceeding have competent representation.