Filed4/10/14  In re Isaiah G. CA2/25

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re ISAIAH G., a Person Coming Under the Juvenile Court Law. | B251078<br>(Los Angeles County<br>Super. Ct. No. CK92330) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>CESAR L.,<br><br>    Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Rudolph A. Diaz, Judge.  Dismissed.

Matthew I. Thue, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel and Peter Ferrera, Deputy County Counsel for Plaintiff and Respondent.

# I. INTRODUCTION

Cesar L., an alleged biological father of Isaiah G., appeals from a juvenile court order terminating parental rights. Parental rights were terminated as to Isaiah and his half-sister, K.A. K.A. is not a subject of this appeal. Cesar L. never appeared in any juvenile court proceeding. Nor was Cesar L. ever identified in any documents filed with the juvenile court. He contends he was not notified of the dependency proceedings. Cesar L. maintains the failure to notify him violated his due process rights. We find Cesar L. lacks standing to appeal.

# II. BACKGROUND

## A. Procedural Background

On February 29, 2012, the Department of Children and Family Services (the department) filed a Welfare and Institutions Code[1] section 300 petition on behalf of Isaiah and K.A. The petition alleges J.A., the children's mother, placed the children in a detrimental and endangering situation. On February 23, 2012, K.A. was diagnosed and hospitalized with pneumonia. The mother allegedly removed the nasal cannula from K.A.'s face, preventing the child from receiving oxygen. The mother also ripped the intravenous needle from K.A.'s right hand. Also, the mother removed the monitor leads from K.A. The section 300 petition alleges the mother attempted to remove K.A. from the hospital against medical advice. The petition also alleges the mother and the father currently and for the last five years abused methamphetamines.

On February 29, 2012, the juvenile court found a prima facie case for detaining the children as persons under section 300. R.H. was identified as K.A.'s father. Isaiah's father was not identified. The juvenile court ruled the prior identification of R.H. as

---

[1] Future statutory references are to the Welfare and Institutions Code unless otherwise noted.

2

Isaiah's father was an error.  The juvenile court ordered the children detained and made monitored visits available to the mother.

On March 27, 2012, the department submitted proof of conducting searches for Isaiah's father without success.  On April 9, 2012, the juvenile court adjudicated the section 300 petition, sustained it and proceeded to disposition.  The children were removed from the mother's custody.  The juvenile court ordered family reunifications services be provided to the mother and children.  No services were provided to R.H.

At the contested six-month review hearing on November 9, 2012, the juvenile court found the mother was not in compliance with her case plan and terminated family reunification services.  The juvenile court scheduled a section 366.26 hearing to select a permanent plan for the children.

At the March 8, 2013 section 366.26 hearing, the department submitted proof of conducting a search for Isaiah's father without success.  The children's foster parents wanted to adopt the youngsters.  On July 8, 2013, at the continued section 366.26 hearing, the foster parents' home study was approved.  No parents appeared at the hearing.  The juvenile court found by clear and convincing evidence the children were adoptable.  Parental rights were terminated regarding Isaiah and K.A.  The foster mother and father were designated as the prospective adoptive parents.  On August 19, 2013, Cesar L. appealed the juvenile court's July 8, 2013 orders.

B.  Factual Background

1.  Detention Report

On February 29, 2012, the social worker submitted her detention report.  K.A. was two months old and Isaiah was two years old at the time of the incident.  On February 23, 2012, just before midnight, K.A. was brought to St. Francis Hospital.  K.A. had pneumonia and difficulty breathing.  She was also blue.  K.A. was put on an intravenous drip and oxygen.  The hospital planned to take K.A. to Miller's Children's Hospital.  The

3

mother removed K.A.'s intravenous drip and oxygen.  The social worker, Tanya Francis-Russell, described what happened thereafter:  "[I] conducted a telephone interview with Dr. Kiplouski with St. Francis Hospital she informed [me] that the staff informed mother of her baby's medical condition, still mother wanted to leave the hospital and transport the baby herself.  Dr. Kiplouski stated [everyone] was explaining to the mother what was going to on hoping to calm mother down but mother still insisted on taking her baby from the hospital.  [Dr. Kiplouski] stated that mother had to be removed from the baby's room to insure the baby remain safe."  Eventually, sheriff deputies became involved.

The mother admitted using methamphetamine a week prior to the incident because of stress.  An anonymous person familiar with the mother spoke to Ms. Francis-Russell.  The person stated the mother was in a "zombie" state half of the time.  A physician identified only as Dr. Africa of the Miller's Children's Hospital stated K.A. had bronchiolitis.  The mother admitted to removing K.A.'s intravenous drip and oxygen.  The mother felt the hospital was not attending to K.A.  The hospital had poked K.A. with a needle in her back and taken fluids and the child was crying.  The mother stated she was under stress because she could not find money received from her income tax.  The mother stated her children have different fathers.  She stated a person identified only as R.H. was Isaiah's father.  In an addendum report, the social worker noted she was unable to submit a request to the parent locator for the fathers because she lacked any identifying information.

2.  Pre-release investigation and hearing

The social worker recommended the children not be released to the custody of the maternal grandmother.  On March 7, 2012, the juvenile court ordered the children detained in shelter care pending the next hearing.

### 3. Jurisdiction Report

On March 27, 2012, the social worker submitted a jurisdiction report. The social worker concluded the children's mother lacked basic parenting skills and sound judgment to safely and appropriately parent them. The social worker noted the mother's illicit drug use history and current methamphetamine use. The social worker recommended family reunification services that included: random drug testing; certified parenting classes; and individual counseling. The mother maintained she had no identifying or contact information regarding Isaiah's father.

### 4. Due diligence declaration

The social worker submitted a due diligence declaration on March 27, 2012 regarding Isaiah's unknown father. The social worker noted various searches that could not be done because the mother provided no identifying information. The social worker submitted a similar due diligence declaration regarding R.H.

### 5. Status review report

On October 4, 2012, the social worker submitted a status review report. The social worker noted the mother tested positive for methamphetamines on May 30, June 27, and August 21, 2012. The mother had attended only 39 of 79 treatment days from May 8 to September 10, 2012. Of the 40 absences, only 8 were excused. The mother missed most of the dates she was supposed to drug test. The mother's attendance in the substance abuse program was inconsistent and she had not made significant progress in her parenting classes. The mother had indicated she was going to stop attending the drug and alcohol program until she was reminded it was necessary in order to reunify with her children. The mother had wanted to get a job and an apartment instead.

During visits, the mother overfed the children. The mother used inappropriate language in front of the children on one visit. The mother failed to visit the children for approximately four weeks. The social worker recommended family reunification services be terminated for the mother.

### 6. Section 366.26 report

On March 8, 2013, the social worker submitted the section 366.26 report. The social worker found an applicant family who were willing and able to provide a safe and permanent home for the children. No father was listed on the birth certificates for either child. No father visited the children. The department again submitted due diligence declarations for Isaiah and K.A.'s fathers. The fathers for both children could not be found or identified.

### 7. May 10, 2013 status report

The social worker noted the children remained in the foster home. The children were doing well and appeared very comfortable. The mother had been incarcerated on March 5, 2013, on felony charges. She was later released on March 28, 2013, as these charges were dismissed. The mother had not participated in court-ordered services and would often not attend visits. The social worker reported, "Children Isaiah [G.] and [K.A.] ha[d] visited once or twice with paternal cousins and godparents to child Isaiah, [S.G. and R.G.]." The social worker noted the foster parents had: provided for the children's medical needs; kept them clean and well dressed; engaged the children in activities promoting development and learning; and continued to cooperate with the case plan. The social worker recommended adoption for the children by the foster parents.

## III.  DISCUSSION

The department moved to dismiss the appeal contending Cesar L. lacked standing. We have previously set forth the general rule in dependency cases for standing on appeal: "As a general rule, a parent may appeal from the termination of parental rights.  (§ 395; Cal. Rules of Court, rule [5.585].)  However, only parties of record may appeal.  (*County of Alameda v. Carleson* (1971) 5 Cal.3d 730.)  A party of record is a person named as a party to the proceedings or one who takes appropriate steps to become a party of record in the proceedings.  (*Eggert v. Pac. States S. & L. Co.* (1942) 20 Cal.2d 199, 201.)  A person does not become a party of record merely because his or her name and interest appear in documents filed with the court or are referenced in the judgment.  (*Ibid.*)"  (*In re Joseph G.* (2000) 83 Cal.App.4th 712, 715, fns. omitted.)  We further explained in the context of an alleged biological father, "[A]n alleged biological father who is not a party of record in the dependency court has no standing to appeal an order terminating parental rights."  (*In re Joseph G., supra,* 83 Cal.App.4th at p. 716; *In re Paul W.* (2007) 151 Cal.App.4th 37, 56-58; accord *In re Baby Boy V.* (2006) 140 Cal.App.4th 1108, 1117; *In re Miguel E.* (2004) 120 Cal.App.4th 521, 539.)  Here, Cesar L. never appeared in the juvenile court nor took steps to do so.  Thus, he has no standing to appeal.

But, Cesar L. contends he was not provided notice of the dependency proceedings and this violated his due process rights.  None of his due process contentions resolve the standing issue.  Cesar L. has no standing *on appeal*, to assert a deprivation of his due process rights.  In any event, no due process violation has occurred.  Our colleagues in the Fourth Appellate District have held:  "Due process requires that a parent is entitled to notice that is reasonably calculated to apprise him or her of the dependency proceedings and afford him or her an opportunity to object.  [Citation.]  The child welfare agency must act with diligence to locate a missing parent.  [Citation.]  Reasonable diligence denotes a thorough, systematic investigation and an inquiry conducted in good faith.  [Citation.]  [¶]  However, there is no due process violation when there has been a good faith attempt to provide notice to a parent who is transient and whose whereabouts are

unknown for the majority of the proceedings. [Citations.]" (*In re Justice P.* (2004) 123 Cal.App.4th 181, 188; *In re Melinda J.* (1991) 234 Cal.App.3d 1413, 1418-1419.)

Here, it is undisputed Cesar L. never received notice of dependency proceedings concerning Isaiah. However, the department demonstrated it acted with diligence. The mother provided no identifying information regarding Isaiah's paternity. Isaiah's birth certificate failed to identify a father. Cesar L. made no appearance nor was he ever mentioned at any point during the dependency proceedings prior to parental rights termination. There is no record that Cesar L. ever visited Isaiah while the child was in foster care. The department thus had no reasonable means of notifying any alleged father for Isaiah.

Cesar L. also contends the juvenile court failed to speak with S.G. and R.G. in an effort to determine who fathered Isaiah. All of his arguments in this regard are mere speculation. Cesar L. argues S.G. and R.G. are Isaiah's paternal cousins. It is unclear from the record whether S.G. and R.G. are paternally related to Isaiah. The relevant sentence appears in the May 10, 2013 status review report. The social worker wrote, "Children Isaiah and [K.A.] ha[d] visited once or twice with paternal cousins and godparents to child Isaiah, [S.G. and R.G.]." As noted, Isaiah's father was unknown to the department and the juvenile court. The only paternal relationship listed is for K.A. Thus, S.G. and R.G. may be paternal cousins to K.A. and not Isaiah. Additionally, there is no evidence S.G. and R.G. would have been able to locate Cesar L. We are unpersuaded that the department failed to act with diligence to identify Isaiah's father.

Nor does any of the authority cited by Cesar L. give him standing. Cesar L. relies on *In re Paul H.* (2003) 111 Cal.App.4th 753, 759. In *Paul H.*, an alleged biological father sought reversal of a court order terminating parental rights. (*Ibid.*) The appellate court found the alleged biological father had standing because he took immediate steps to become a party once notified of the dependency proceedings. (*Ibid.*) The Court of Appeal found, "He contacted the social worker, appeared at the next court hearing, communicated to the court that he might be the minor's father and attempted to complete paternity testing." (*Ibid.*) *Paul H.* is inapplicable. Unlike the alleged father in *In re Paul*

8

*H.*, Cesar L. did not appear in the dependency proceeding in any manner. His first act was to file a notice of appeal. He was not a party of record during the dependency proceeding at any point. (*In re Joseph G.*, *supra*, 83 Cal.App.4th at p. 715; see *In re Baby Boy V.*, *supra*, 140 Cal.App.4th at pp. 1113, 1116-1117 [alleged father had standing to appeal when he appeared in dependency proceeding at earliest practical point prior to termination of parental rights and attempted to join].)

Cesar L. also cites to *In re Alyssa F.* (2003) 112 Cal.App.4th 846, 855, arguing as an alleged biological father he is entitled to notice to change his paternity status. *Alyssa F.* concerned a father living in Mexico who did not receive notice of dependency proceedings concerning his daughter. (*Id.* at p. 850.) The mother identified the father as the biological father. (*Ibid*.) *Alyssa F.* is also inapplicable. As noted, Cesar L. was never identified in any submission or proceeding to the juvenile court as a possible biological father. The first time his name appears is on the notice of appeal. Accordingly, Cesar L. lacks standing to appeal the juvenile court's order terminating parental rights as to Isaiah and no due process violation has occurred.

IV. DISPOSITION

The appeal is dismissed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

TURNER, P. J.

We concur:

MOSK, J.                                                  MINK, J.[*]

---

[*]     Retired Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.