Filed 7/15/24  In re Levi R. CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re LEVI R. et al., Persons Coming Under the Juvenile Court Law. | B331758 (Los Angeles County Super. Ct. No. 22CCJP00930) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. HEATHER G., Defendant and Appellant; NICHOLAS R., Defendant and Respondent. | |

APPEAL from orders of the Superior Court of Los Angeles County, Pete R. Navarro, Judge Pro Tempore. Reversed and remanded with instructions.

Suzanne M. Nicholson, under appointment by the Court of Appeal for Defendant and Appellant Heather G.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel and Jane Kwon, Principal Deputy County Counsel, for Plaintiff and Respondent Los Angeles County Department of Children and Family Services.

John L. Dodd, under appointment by the Court of Appeal, for Defendant and Respondent Nicholas R.

_____

The juvenile court asserted dependency jurisdiction over Levi R. and Anabella R. because their mother, Heather G. (mother) and their father, Nicholas R. (father) had a history of domestic violence and mother had mental health problems she addressed by using marijuana. The court later placed the two children with father and scheduled a review hearing pursuant to Welfare and Institutions Code section 364.[1] Instead of holding

_____

[1] Undesignated statutory citations are to the Welfare and Institutions Code. " '[S]ection 364 . . . governs . . . review hearings when a dependent child has been placed back in the custody of one parent.' [Citation.] At a section 364 review hearing, '[t]he court shall terminate its jurisdiction unless the social worker or his or her department establishes by a preponderance of evidence that the conditions still exist which would justify initial assumption of jurisdiction under Section 300, or that those conditions are likely to exist if supervision is withdrawn.' [Citation.]" (*In re D.N.* (2020) 56 Cal.App.5th 741, 755, fn. 10 (*D.N.*).)

that hearing, the court decided to terminate jurisdiction at a nonappearance progress report hearing held approximately three months prior to the date scheduled for the section 364 review hearing. Concurrent with its order terminating dependency jurisdiction, the juvenile court awarded father sole physical custody of Levi and Anabella, and granted mother only monitored visits with the children.

On appeal, mother contends this expedited review procedure violated her constitutional right to due process. Although not every departure from section 364's procedures violates the federal constitution, we conclude mother's right to due process was violated here. The Los Angeles County Department of Children and Family Services (DCFS or the agency) and father acknowledge that the record contains no evidence that prior to the nonappearance progress report hearing, mother was served with a significant last minute information report.[2] In that report, the agency (1) recommended—for the first time—the juvenile court terminate jurisdiction and award father sole physical custody and only monitored visitation to mother, and (2) provided evidence in support of its recommendations. Accordingly, mother was deprived of adequate notice of this report and an opportunity to marshal contrary evidence or otherwise rebut the report and its recommendations. Because DCFS and father fail to discharge their burden of demonstrating, beyond a reasonable doubt, that this constitutional violation did not affect the juvenile court's

---

[2] Mother, DCFS, and father are the only parties to this appeal.

3

rulings, we reverse and remand the matter for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND[3]

We summarize only those facts pertinent to the instant appeal. In our Discussion, *post*, we describe additional facts relevant to the issues before us.

Mother has five children: Matthew (born July 2014), Hunter (born October 2015), Levi R. (born October 2018), Anabella R. (born January 2021), and Hope (born April 2023). Matthew's and Hunter's father is Matthew H., Levi's and Anabella's father is Nicholas R., and the parties do not identify Hope's father. Because Levi and Anabella are the only children subject to this appeal, we mention the other children only insofar as they are relevant to our resolution of this matter.

In March 2022, DCFS filed a petition seeking dependency jurisdiction under section 300 over, inter alia, Levi and Anabella. As later modified and sustained, the petition alleged mother and

---

[3] In summarizing the facts, we rely in part on admissions made by the parties in their appellate briefing, including portions of their briefs from prior appeals that the parties have incorporated by reference into their briefing for the instant appeal. (See *Artal v. Allen* (2003) 111 Cal.App.4th 273, 275, fn. 2 [" '[A] reviewing court may make use of statements [in briefs and argument] . . . as admissions against the party [advancing them].' "].) We also rely in part on assertions DCFS and father make that mother does not contest in her reply. (See *Association for Los Angeles Deputy Sheriffs v. County of Los Angeles* (2023) 94 Cal.App.5th 764, 773–774 [concluding that the appellants "tacitly concede[d]" a point raised in the respondents' brief by "failing to dispute it in their reply"].)

4

father had a history of violent altercations, including an instance in which mother threw a soda can at father and an occasion on which father pointed a handgun at Matthew, Hunter, and Levi. The modified and sustained version of the petition further averred that mother has mental health problems, mother treats her problems by self-medicating with marijuana, and her mental health problems manifested in suicidal ideation and an expression of being overwhelmed with her children's care.

At a combined adjudication/disposition hearing held in April 2022, the juvenile court sustained the petition as modified, removed Levi and Anabella from parental custody, ordered DCFS to provide mother and father with reunification services, and authorized mother to have monitored visits with the children. Mother appealed the juvenile court's disposition order; we later affirmed that order in an unpublished opinion in case number B320221.

At a six-month review hearing held in November 2022, the juvenile court found that returning Levi and Anabella to their parents would create a substantial risk of detriment to the children's safety, mother had not complied with her case plan, and DCFS provided reasonable services to mother. The court ordered DCFS to continue to provide reunification services to mother for an additional six months. We later issued an unpublished decision in case number B325378 wherein we concluded the juvenile court erred in finding that DCFS provided reasonable services to mother but upheld the court's finding that returning the children to mother's custody would expose them to a substantial risk of detriment to their safety.

The juvenile court held a 12-month review hearing in May 2023. Mother submitted on DCFS's recommendation to

return Levi and Anabella to father's custody in Michigan. The court (1) found placing Levi and Anabella with father would not create a substantial risk of detriment to the children and that father was compliant with his case plan; (2) released Levi and Anabella to father; (3) granted family maintenance services to father, and enhancement services and monitored visits to mother; (4) ordered DCFS to visit Levi and Anabella in Michigan to assess if continued jurisdiction was necessary; and (5) scheduled a nonappearance progress report hearing for June 22, 2023 and a section 364 review hearing for November 6, 2023.

On June 22, 2023, DCFS filed a last minute information report in which the agency stated Levi and Anabella had "adjusted well to the father's home and . . . developed a positive healthy bond with father, his partner and the rest of the family." DCFS recommended that "jurisdiction continue for another 30 days in order for the father to continue to receive the support of the state of Michigan in obtaining Anabella's birth certificate and for the children to be referred to an Early on Assessment and successfully be linked to mental health services."

Also on June 22, 2023, the juvenile court held a nonappearance progress report hearing at which mother and her counsel appeared. The court stated it had read and considered DCFS's last minute information report. The court scheduled a further nonappearance progress report hearing for August 9, 2023 for the court to "address the mother's request for unmonitored visitation with the minors and the possibility of terminating jurisdiction . . . ." The section 364 review hearing remained calendared for November 6, 2023.

On August 3, 2023, DCFS filed another last minute information report in which the agency summarized its

interviews with, inter alia, father and mother, opined that Levi and Anabella "appear[ed] to be happy, energetic, and comfortable in the father's home," and recommended that "jurisdiction be terminated as to . . . Levi R[.] and [Anabella R.] with a family law order awarding father . . . joint legal, sole physical custody of the children . . . and monitored visits for the mother . . . ."

The juvenile court convened a nonappearance progress report hearing on August 9, 2023 at which mother and her counsel appeared. DCFS's counsel reiterated the agency's recommendation that the court terminate jurisdiction over Levi and Anabella, award sole physical custody of the children to father and joint legal custody to both parents, and grant mother monitored visitation with the children. Mother's counsel objected to terminating jurisdiction on the ground that DCFS had not adhered to the procedures mandated by section 364, which mother's counsel indicated had prevented her and her client from "prepar[ing] a proper response."

The juvenile court overruled mother's counsel's objection on the ground that she had not previously "object[ed] to the court setting a hearing on the topic of termination." The court remarked, "[T]here is no need to maintain jurisdiction with the [two] children. They are with the father in Michigan. None of the parties reside[s] in California.[4] The children are doing fine under his care." The juvenile court terminated jurisdiction over Levi and Anabella, awarded father sole physical custody and both parents joint legal custody, authorized mother to have monitored visits, stayed the order terminating jurisdiction pending receipt

---

[4] Although mother had moved from Michigan to California in December 2021, mother informed DCFS she moved back to Michigan in or about fall 2022.

7

of a juvenile custody order, and vacated the November 6, 2023 section 364 review hearing.[5]

On August 11, 2023, the juvenile court lifted the stay of its order terminating dependency jurisdiction over Levi and Anabella and issued juvenile custody orders consistent with the rulings made at the August 9, 2023 nonappearance progress report hearing. Mother timely appealed the juvenile court's orders terminating jurisdiction and awarding custody and visitation as to Levi and Anabella.

## DISCUSSION

On appeal, mother argues the juvenile court violated her constitutional right to due process at the August 9, 2023 nonappearance progress report hearing by deciding to terminate dependency jurisdiction over Levi R. and Anabella R., award father sole physical custody of the children, and grant mother only monitored visitation. In addition to her due process claim, mother contends the court abused its discretion in awarding father sole physical custody and granting mother monitored visitation.

We conclude the juvenile court violated mother's right to due process by failing to afford her with constitutionally sufficient notice and an opportunity to be heard before

---

[5] It appears that several hours after the August 9, 2023 nonappearance progress report hearing concluded, DCFS filed a last minute information report indicating, inter alia, mother provided the agency with a document from the State of Michigan Department of Health and Human Services concerning "her infant daughter's [(Hope's)] condition." This filing has no apparent relevance to the instant appeal.

terminating dependency jurisdiction and issuing exit orders concerning Levi R. and Anabella R.[6]  Because the juvenile court must revisit these rulings upon remand, we do not decide whether the court abused its discretion in issuing the exit orders.

## A.  Mother Lacked Adequate Notice and Opportunity To Be Heard on DCFS's Recommendation To Terminate Dependency Jurisdiction with Certain Exit Orders

"The Fourteenth Amendment to the United States Constitution provides that '[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law . . . .'  [Citation.]  Except in emergent circumstances, this provision guarantees reasonable notice and a meaningful opportunity to be heard before the state may deprive a person of a protected liberty or property interest."  (*In re J.R.* (2022) 82 Cal.App.5th 569, 572 (*J.R.*).)  Constitutional " 'due process guarantees apply to dependency proceedings' " because " 'parenting is a fundamental right . . . .' "  (See *In re R.F.* (2021) 71 Cal.App.5th 459, 470 (*R.F.*).)  "Because the parties do not dispute the facts concerning [mother's] due process claim, the instant alleged constitutional error presents a purely legal question that is subject to de novo review."  (*J.R.*, at pp. 587–588.)

---

[6] "When terminating its jurisdiction over a child who has been declared a dependent child of the court, section 362.4 authorizes the juvenile court to issue a custody and visitation order (commonly referred to as an 'exit order') that will become part of the relevant family law file and remain in effect in the family law action 'until modified or terminated by a subsequent order.' "  (*In re T.S.* (2020) 52 Cal.App.5th 503, 513 (*T.S.*).)

As noted in our Factual and Procedural Background, *ante*, at the 12-month review hearing in May 2023, the juvenile court placed Levi and Anabella with father and scheduled a section 364 review hearing for November 6, 2023.  Section 364, subdivision (b) provides that "[a]t least 10 days prior to the hearing," DCFS must file and "furnish[ ] to all parties" "a supplemental report . . . describing the services offered to the family and the progress made by the family in eliminating the conditions or factors requiring court supervision" and providing a "recommendation regarding the necessity of continued supervision."  (See § 364, subd. (b).)  Evidence may be "presented by [DCFS], the parent, . . . or the child" at a section 364 review hearing.  (See § 364, subd. (c).)

Instead of convening the section 364 review hearing scheduled for November 6, 2023, the juvenile court decided at an August 9, 2023 nonappearance progress report hearing to terminate dependency jurisdiction over Levi and Anabella and issue exit orders awarding father sole physical custody of the children and granting mother monitored visitation.  It is undisputed that DCFS did not file and serve upon the parties a formal section 364 report.

DCFS and father maintain the juvenile court's departure from section 364's procedures did not violate due process because DCFS had submitted other reports documenting the agency's observations and recommendations, and mother had actual notice of " 'the possibility' " the juvenile court could terminate jurisdiction prior to the scheduled section 364 hearing.  DCFS and father insist mother "did not object to the setting of further nonappearance hearings to address . . . termination [of

jurisdiction] . . . and never requested a contested, evidentiary hearing on the issue . . . ."

We acknowledge that because " 'due process "is a flexible concept" ' " (*T.S.*, *supra*, 52 Cal.App.5th at p. 515), a deviation from section 364's safeguards does not necessarily infringe upon a parent's Fourteenth Amendment rights. We conclude for the reasons set forth below that DCFS and the juvenile court did *not* discharge their constitutional obligation of ensuring that mother had notice and an opportunity to be heard " ' " 'at a meaningful time and in a meaningful manner.' [Citation.]" ' [Citation.]" (See *R.F.*, *supra*, 71 Cal.App.5th at p. 470.)

To recap, in the last minute information report DCFS filed on August 3, 2023, the agency recommended "jurisdiction be terminated as to the children, Levi R[.] and [Anabella R.] with a family law order awarding the father . . . joint legal, sole physical custody of the children . . . and monitored visits for the mother . . . ." This recommendation differed from the agency's recommendation in its prior report, the last minute information report filed on June 22, 2023, in which DCFS recommended retention of jurisdiction for another 30 days and did not ask the court to award father sole physical custody and grant mother only monitored visitation. The report filed on August 3, 2023 was also significant because it contained evidence bearing on whether the court should terminate jurisdiction and issue exit orders, including the agency's claims that "the children have developed a positive bond to their father and the rest of [the] family," and that mother "stated that she would be willing to do a hair follicle [drug] test . . . ." Indeed, DCFS and father argue this report supports the juvenile court's decision to terminate dependency jurisdiction and issue its exit orders.

11

Critically, DCFS and father acknowledge "the record does not . . . include proofs of service with each Last Minute Information Report for the Court," and they do not claim the agency ever provided mother or her counsel with a copy of any of those reports (including the report filed on August 3, 2023) prior to the August 9, 2023 hearing.[7] This " 'failure to provide [a] parent[ ] with a copy of the social worker's report, upon which the court will rely in coming to a decision, is a denial of due process' " because without sufficient advance notice of the report, the parent lacks "a meaningful opportunity to . . . request an evidentiary hearing" at which the parent may " 'examine evidence and cross-examine witnesses . . . .  [Citation.]' [Citation.]"  (See *R.F.*, *supra*, 71 Cal.App.5th at pp. 470, 472; see also *id.* at p. 473 [indicating that the failure to provide a parent with notice of the evidence supporting a "chang[e in] custody and visitation" prior to the entry of exit orders may deprive the parent of "proper notice and an opportunity to be heard"].)

In sum, we hold these expedited procedures in the juvenile court violated mother's right to due process because she lacked a reasonable opportunity to respond to the agency's recommendation to terminate dependency jurisdiction with exit orders that abridged her custodial rights as to Levi and Anabella.[8]

---

[7] (See *D.N.*, *supra*, 56 Cal.App.5th at p. 767 [noting that respondents are obligated to assist the reviewing court in sustaining the judgment].)

[8] In addressing mother's due process claim, DCFS asserts she failed to ask for a contested hearing on August 9, 2023. Similarly, in discussing mother's claim the juvenile court abused its discretion in issuing the exit orders, father faults mother for

12

**B.    DCFS and Father Fail To Prove—Beyond a Reasonable Doubt—That the Due Process Violation Did Not Contribute to the Juvenile Court's Rulings**

DCFS and father argue we should affirm the juvenile court's decision to terminate jurisdiction and its exit orders because mother fails to establish a reasonable probability that she would have obtained a more favorable ruling had the due process violation not occurred. The authority upon which the agency and father rely for the proposition that mother bears the burden of establishing prejudice is inapposite. In *In re Celine R.* (2003) 31 Cal.4th 45, the high court held that the juvenile court's alleged violation of the "solely statutory" right to the "appoint[ment of] separate counsel" for a minor warranted reversal only if it was "reasonably probable the result would have been more favorable to the appealing party but for the error." (See *Celine R.*, at pp. 51–52, 59–60, citing *People v. Watson* (1956) 46 Cal.2d 818, 836.)

---

failing to request a contested hearing and object to the exit orders recommended by the agency. Insofar as DCFS and father are arguing mother did not preserve her due process claim, we reject that contention because mother lacked a meaningful opportunity to respond to the agency's August 3, 2023 last minute information report; mother's counsel raised this objection at the August 9, 2023 hearing. (See Factual & Procedural Background, *ante* [noting that mother's counsel indicated that DCFS's failure to adhere to § 364's procedures prevented her from responding to the agency's recommendations]; *In re Paul W.* (2007) 151 Cal.App.4th 37, 58 [" '[A] reviewing court ordinarily will not consider a challenge to a ruling if an objection *could have been* but was not made in the trial court[,]' " italics added].)

In contrast, we have held the *Chapman*[9] harmless error analysis applies to " ' "most [federal] constitutional errors," ' " including violations of a parent's due process rights. (See *J.R.*, *supra*, 82 Cal.App.5th at pp. 591–592.) " ' "The beyond-a-reasonable-doubt standard of *Chapman* 'requir[es] the beneficiary of a [federal] constitutional error to prove beyond a reasonable doubt that the error complained of did not contribute to the [adverse ruling].' [Citation.] . . . [Citation.]" [Citation.]' [Citation.]"[10] (*J.R.* at p. 592.)

In support of their position that mother was not prejudiced, DCFS and father argue, "[T]he court was already well informed that father complied with his court-ordered case plan, redressed the issues that necessitated DCFS's and the juvenile court's interventions, and demonstrated insight as to the children's needs by actively connecting them to supportive services. . . . The children were also bonded to father and his family, happy, and in good spirits in father's home." The agency and father further contend, "[M]other continued using marijuana, was not drug testing, had not received a psychological evaluation, was not receiving mental health services with a licensed therapist, and her visits with the children were inconsistent." Additionally,

---

**9** (*Chapman v. California* (1967) 386 U.S. 18.)

**10** Father also seems to argue the Court of Appeal's decision in *R.F.* requires mother to demonstrate prejudice. *R.F.* did not hold that *Chapman* is inapplicable to due process claims. Instead, *R.F.* concluded that the errors at issue there were prejudicial under either *Watson* or *Chapman*. (See *R.F.*, *supra*, 71 Cal.App.5th at pp. 474–475; see also *J.R.*, *supra*, 82 Cal.App.5th at p. 591, fn. 33 [" ' "[A]n opinion is not authority for a proposition not therein considered." ' "].)

14

father argues, "[I]t is not reasonably probable the court would have ordered joint physical custody" because mother "apparently was unable to drug test" as "[s]he was 'in complete isolation' " in "prepar[ation] for a bone marrow transplant for her new infant . . . ."[11]

In arguing that mother suffered no prejudice, the agency and father overlook the nature of the constitutional error before us. As set forth in Discussion, part A, *ante*, mother lacked a meaningful opportunity to respond to the August 3, 2023 last minute information report at the August 9, 2023 nonappearance progress report hearing. DCFS and father do not argue the record demonstrates, beyond a reasonable doubt, that even if mother had been given sufficient notice of the last minute information report filed on August 3, 2023, she would have been unable to persuade the juvenile court to issue rulings more favorable to her. That is the relevant inquiry.[12]

Given that the juvenile court had already scheduled a section 364 review hearing for November 6, 2023, a favorable ruling could have been the court's exercise of its discretion to

---

[11] Hope appears to be the "new infant" to which father is referring in the quoted passage.

[12] (Cf. *In re Armando L.* (2016) 1 Cal.App.5th 606, 609–610, 620 ["The flaw in the agency's argument is the absence of potential evidence [as to custody and termination of dependency jurisdiction] to the contrary that could have been developed only in a contested hearing. Mother sought a contested section 364 hearing and was denied any opportunity to testify or present other evidence on the legally erroneous basis she lacked standing. We cannot discern what evidence mother could have presented at the hearing that may have contradicted or elaborated on evidence in the social workers' reports."].)

keep that hearing on calendar, at which point the court and the parties would have benefitted from any additional information provided by the agency in the supplemental report required by section 364, subdivision (b) or by mother herself.[13]  Although the juvenile court rejected mother's request that it follow section 364's procedures (see Factual & Procedural Background, *ante*), we cannot conclude beyond a reasonable doubt that mother would not have been able to convince the court to undertake that course if she had been given timely notice of the August 3, 2023 last minute information report.  With sufficient advance notice of the report, mother could have assessed the evidence included therein and attempted to persuade the court to defer ruling on termination of jurisdiction and issuance of exit orders until the record was more fully developed.  For instance, the August 3, 2023 last minute information report shows mother had scheduled a psychological test for November 1, 2023, and that although the results apparently would not be available until November 30, 2023, the testing center represented to DCFS that "this was the earliest available appointment for the mother [and] she [was] on the cancelation list should another client cancel."  If mother had a reasonable opportunity to review the report prior to the hearing, she could have addressed whether the results of mother's forthcoming psychological assessment would be available prior to the section 364 hearing scheduled for November 6, 2023.

Furthermore, the August 3, 2023 last minute information report states, "Although Levi still struggles with aggressive

---

[13]  (See Discussion, part A, *ante* [describing the report required by § 364, subd. (b) and the evidence that may be considered at a § 364 hearing].)

16

behaviors such as hitting and tantrums, father understands that these behaviors stem from past trauma and disruptions in his life." If mother had been timely served with the August 3, 2023 last minute information report, she could have ascertained whether father was the source of these vague allusions in the report to "past trauma and disruptions in [Levi's] life," and, if so, she could have argued father had minimized his role in causing Levi's behavioral issues. This is because, in sustaining the dependency petition, the juvenile court found father had "brandished and pointed a handgun at" Matthew, Hunter, and Levi. Additionally, mother could have offered testimony further elaborating on her allegations that she saw father (1) "brandish[ ] a gun" in front of mother and the children and (2) "threaten[ ] to kill Matthew, Hunter, and himself."

These examples demonstrate that DCFS and father have failed to prove, beyond a reasonable doubt, that the due process violation was harmless. Accordingly, we reverse the juvenile court's termination of jurisdiction and its exit orders, and remand the matter to allow the court and DCFS to cure this constitutional violation. We express no opinion on how the juvenile court should rule on the merits of custody and termination of its jurisdiction.

17

## DISPOSITION

We reverse the juvenile court's orders terminating dependency jurisdiction over Levi R. and Anabella R., and awarding custody and visitation as to the two children. Upon remand, the juvenile court and respondent Los Angeles County Department of Children and Family Services shall afford Heather G. constitutionally sufficient notice and a meaningful opportunity to be heard, and conduct further proceedings consistent with this opinion.

NOT TO BE PUBLISHED.


BENDIX, J.


We concur:



ROTHSCHILD, P. J.



WEINGART, J.